CHARLES J. BROWN, M.D., PLAINTIFF v. RANDALL A. ROTH, MARY JO ROTH, LAKE PROPERTIES LIMITED, H.B. PETHEL COMPANY, INCORPORATED AND AMERISPEC, DEFENDANTS

No. COA98-751

(Filed 20 April 1999)

**Vendor and Purchaser— realtor—square footage—reliance on appraisal**

Summary judgment was improperly granted on claims for breach of fiduciary duty and negligent misrepresentation against a realtor arising from plaintiff's purchase of a house with fewer square feet than represented where the realtor had relied upon the square footage in an appraisal. There was a genuine issue of material fact as to whether defendant exercised reasonable care in obtaining and communicating to plaintiff the heated square footage; a real estate agent's reliance on a reliable appraiser for computation of square footage is evidence of the agent's compliance with her standard of care but is not conclusive. Summary judgment on fraud and unfair and deceptive trade practices claims was proper because there was no evidence that defendant knew it had communicated false square footage information.

Appeal by plaintiff from order filed 23 March 1998 by Judge Dennis J. Winner in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 February 1999.

*Pinto Coates Kyre & Brown, PLLC, by David L. Brown and Martha P. Brown, for plaintiff-appellant.*

*Waggoner, Hamrick, Hasty, Monteith and Kratt, PLLC, by S. Dean Hamrick and John W. Bowers, for defendant-appellee Lake Properties Limited.*

**BROWN v. ROTH**

[133 N.C. App. 52 (1999)]

GREENE, Judge.

Charles J. Brown (Plaintiff) appeals from the trial court's granting of Lake Properties Limited's (Defendant) motion for summary judgment.

In June of 1993, Randall and Mary Roth (the Roths) owned a house and property (collectively, the Property) located in Huntersville, North Carolina, and hired Defendant as their real estate agent to sell the Property. As a result of this decision, Lori Ivester (Ms. Ivester), a licensed real estate agent and employee of Defendant, was responsible for obtaining information from the Roths, and preparing a multiple listing form. On the multiple listing form, Ms. Ivester represented, among other things, that the Roths' house contained 3,484 square feet of heated living area.[1] Ms. Ivester received the information regarding square footage from an appraisal performed, for the Roths, by H.B. Pethel Company, Inc. (Pethel), a well known and highly respected appraiser. Ms. Ivester did not verify the information in the Pethel appraisal independently prior to preparing the multiple listing form.

Also in the summer of 1993, Defendant hosted an open house at the Property to attract potential buyers, which Plaintiff attended. At the open house, Plaintiff met Earl Crosland (Mr. Crosland), another employee of Defendant and a licensed real estate agent, who showed Plaintiff the Property. At the open house, Plaintiff received a copy of the multiple listing form prepared by Ms. Ivester, which represented the Roths' house as having 3,484 heated square feet. Shortly after the open house, Plaintiff contacted and met with Mr. Crosland about his interest in making an offer to purchase the Property. Mr. Crosland informed Plaintiff he could represent Plaintiff in the purchase of the Property as the buyer's agent.

On 25 September 1993, Plaintiff and Defendant entered into a "Dual Agency Agreement," wherein they agreed Defendant would act "as agent for both [the Roths] and [Plaintiff]" with respect to the sale and purchase of the Property. The record reveals that this "Dual Agency Agreement" was signed by Plaintiff and Defendant. The signature line for the seller on this form agreement is blank. There is no indication in this record that the Roths consented, orally or in writing, to permit Defendant to serve as a dual agent.

---

1. It is not disputed that the Roths' house is complex in design, not a simple rectangular house, and square footage is difficult to ascertain.

On 1 October 1993, Plaintiff offered to purchase the Property for $565,000.00, and his offer was accepted by the Roths on 3 October 1993. The closing on the Property was held on 12 November 1993 and Defendant received, from the Roths, a 5 percent commission totaling $28,250.00.

In December of 1995, in an effort to take advantage of lower interest rates, Plaintiff decided to refinance the Property, and had an appraisal performed by Varnadore & Associates (Varnadore). The Varnadore appraisal indicated the Roths' house contained only 3,108 heated square feet, nearly 400 square feet less than the amount represented on the multiple listing form. It is not disputed that the 3,108 figure represents the correct heated square footage of the Roths' house.

On 14 November 1996, Plaintiff filed a complaint against the Roths, Defendant, Pethel, and Amerispec, but subsequently dismissed all parties except Defendant voluntarily. Plaintiff seeks relief from Defendant under four claims: (1) breach of fiduciary duty; (2) negligent misrepresentation; (3) fraud; and (4) unfair and deceptive trade practices. On 14 January 1997, Defendant filed its answer, which contains a cross-claim for indemnity against Pethel for any erroneous representations of square footage contained in Pethel's appraisal. Defendant moved for summary judgment, and that motion was granted as to all claims in an order filed 23 March 1998.

In its order granting Defendant's motion for summary judgment, the trial court concluded, *inter alia*, that Defendant, as a realtor, "could reasonably rely on the measurements of a house by a trained and professional appraiser who had a good reputation for appraisals in [the] general area in which the house was located."

The dispositive issue is whether genuine issues of material fact exist as to Defendant's breach of duty to accurately report the square footage of the Roths' house.

A real estate agent has the fiduciary duty "to exercise reasonable care, skill, and diligence in the transaction of business [e]ntrusted to him, and he will be responsible to his principal for any loss resulting from his negligence in failing to do so." 12 C.J.S. *Brokers* § 53, at 160 (1980). "The care and skill required is that generally possessed and exercised by persons engaged in the same business." *Id.*, § 53, at 161. This duty requires the agent to "make a full and truthful disclosure [to the principal] of all facts known to him, or discoverable with reason-

## BROWN v. ROTH

[133 N.C. App. 52 (1999)]

able diligence" and likely to affect the principal. *Id.*, § 57, at 172; James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 8-9, at 243 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 4th ed. 1994) [hereinafter *Webster's Real Estate Law in North Carolina*] (agent has duty to disclose all facts he "knows or should know would reasonably affect the judgment" of the principal). The principal has "the right to rely on his [agent's] statements," and is not required to make his own investigation. 12 C.J.S. *Brokers* § 57, at 172.

"Generally, a broker must act solely for the benefit of his principal, who first employed him, and may not undertake to represent an interest adverse to the principal." *Id.*, § 62, at 187. A broker, however, may act as the agent of two parties with adverse interest, "with the full knowledge and consent of both." *Id.*, § 62, at 189; 12 Am. Jur. 2d *Brokers* § 112 (1997) (absent an agreement between the seller and the purchaser, "a broker may not act as agent for both the seller and purchaser in the same transaction"). A broker acting as a dual agent "may still be liable in damages to one of the parties for a breach of duty to such party by reason of his acts in the course of the transaction." 12 C.J.S. *Brokers* § 62, at 189. In other words, the dual agent "owes all fiduciary and other agency duties to both principals." *Webster's Real Estate Law in North Carolina* § 8-9, at 243.

In this case, there is some question as to whether there exists a lawful dual agency, as there is no indication in this record that the Roths agreed that Defendant could serve as both an agent for the seller and for the purchaser. In any event, it is not disputed that Defendant and Plaintiff entered into a contract wherein Defendant agreed to act as Plaintiff's agent in the purchase of the Property. Thus Defendant had a fiduciary obligation to make a full and truthful disclosure to Plaintiff of all material facts, with regard to the Property, known by it or discoverable with reasonable diligence. The heated square footage of the Roths' house was a material fact and was discoverable by Defendant with reasonable diligence[2] and thus should have been disclosed by Defendant to Plaintiff.

Defendant does not contest its duty to disclose to Plaintiff the square footage of the Roths' house. It nonetheless argues there was no breach of its duty to Plaintiff. In other words, Defendant contends it was reasonable for it to rely on the square footage computation made by the Roths' appraiser and the communication of that number

---

2. There is no dispute that Defendant had access to the Roths' house, as it was the selling agent for the Roths.

to Plaintiff discharged Defendant's duty to Plaintiff. We agree that a real estate agent's reliance on a reliable appraiser for the computation of the square footage of a house, when that agent represents the buyer, is some evidence of that agent's compliance with his standard of care. It is not, however, conclusive as a matter of law. Indeed, the North Carolina Real Estate Commission (Commission) suggests that real estate agents "are expected to personally measure all properties they list and accurately calculate their square footage. They must not rely on tax records, information from a previous listing, or representations of the seller or others." N.C. Real Estate Comm'n, *Residential Square Footage Guidelines* 5 (1999). The Commission further suggests that "where a complex, odd-shaped dwelling is involved, agents should advise the seller (or buyer, if appropriate) to seek the assistance of a State-licensed or State-certified appraiser or an experienced engineer or architect in calculating the square footage." *Id.* Thus genuine issues of material fact exist as to whether Defendant exercised reasonable care in obtaining and communicating to Plaintiff the heated square footage of the Roths' house, and summary judgment was not proper on the breach of fiduciary duty and negligent misrepresentation claims. N.C.G.S. § 1A-1, Rule 56(c) (1990) (summary judgment not appropriate if genuine issues of material fact exists); *Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 595-96, 394 S.E.2d 643, 648 (1990) (the question of "reasonable care" depends upon the circumstances of each case and is usually a question for the jury), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991); *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996) (negligent misrepresentation requires the failure to exercise reasonable care and competence in obtaining and communicating information). Because there is no evidence in this record that Defendant knew it had communicated false square footage information to Plaintiff, summary judgment on the fraud and unfair and deceptive trade practices claims was proper.[3] *Forbes*, 99 N.C. App. at 594, 394 S.E.2d at 647 (fraud requires showing that misrepresentation was made with knowledge of its falsity).

In so holding, we reject Defendant's argument that *Marshall v. Keaveny*, 38 N.C. App. 644, 248 S.E.2d 750 (1978), requires we affirm the trial court. In the *Marshall* case, the purchaser's false misrepresentation claim, filed against the seller, was dismissed because the

---

3. Plaintiff, in support of his unfair and deceptive trade practices claim, only argues that it should survive summary judgment because there is evidence of fraud on the part of Defendant. Because we hold there is no evidence of fraud, it follows the unfair and deceptive trade practices claim also must fail.

purchaser had access to the house and could have measured its size. There is no indication, in that case, that the house was complex and difficult to measure. Furthermore, the claim in that case was against the seller, not against the purchaser's agent, who was employed for the sole purpose of assisting the purchaser in purchasing a house, and owed a fiduciary duty of reasonable care and competence to the purchaser.

Affirmed in part, reversed in part, and remanded.

Judges LEWIS and HORTON concur.