ROGER SUTTON AND TERRI SUTTON, PLAINTIFFS v. WAYNE DRIVER, JOHN VANN PARKER, JR., JOHN VANN PARKER, ROY K. PARKER, COASTLAND REALTY, INC., CENTURY 21 COASTLAND REALTY, INC., BLOCK 39, LLC, BP2, INC., HENRY L. REAVES, JR., AND SUSAN A. REAVES, DEFENDANTS

No. COA10-82

(Filed 19 April 2011)

## 1. Brokers— dual brokerage planned adjacent development— duty to disclose

In a coastal real estate sale involving a dual brokerage, the broker had a duty to make a full and truthful disclosure to plaintiffs of all material facts known to the broker or discoverable by the broker with reasonable diligence, with a non-disclosed fact being material when it would have influenced the parties' decision in entering the

SUTTON v. DRIVER

[211 N.C. App. 92 (2011)]

contract. The property in this case had an unobstructed view of the ocean over an undeveloped tract that would soon be developed by the owners of the real estate agency and others.

**2. Real Estate— fraud and negligent misrepresentation— development of adjacent tract**

Summary judgment should not have been granted for a real estate brokerage and its owners on fraud and negligent misrepresentation claims where the brokerage sold coastal property with a view of the ocean over an adjacent tract without disclosing that the brokerage owners and others were planning the development of the adjacent tract.

**3. Fraud— sale of real estate—future adjacent development not disclosed**

The trial court properly granted summary judgment for a real estate broker on a claim for fraud where the broker sold plaintiffs a coastal property with an unimpeded view of the ocean across a property that was about to be developed by the owners of the real estate agency. Plaintiffs pointed to no evidence that the broker was aware of the agency owner's actions and did not explain how the broker's actions constituted fraud rather than negligence.

**4. Real Estate— negligent misrepresentation—failure to disclose planned adjacent development**

The trial court should not have granted summary judgment for a real estate broker on a negligent misrepresentation claim arising from the sale of coastal property with a view of the ocean that was about to be obstructed by a development in which the real estate agency's owners were participating. The broker did not speak to the owner of the agency about the possible development of the adjacent property; it was for the jury to decide why he did not do so and whether he failed to act with reasonable diligence.

**5. Unfair Trade Practices— real estate sale—undisclosed information**

Summary judgment for the owners of a real estate brokerage and a broker on an unfair and deceptive practices claim arising from the sale of coastal land with an ocean view was reversed where the owners of the brokerage were involved in a project to develop adjacent land that would block the ocean view. A claim of unfair and deceptive trade practice can be established against realtors by proving either fraud or negligent misrepresentation in a commercial setting.

**6. Real Estate— undisclosed information—liability of sellers**

Summary judgment against the sellers of coastal property was reversed on claims of fraud and negligent misrepresentation because the principal is liable for the fraudulent acts of his real estate agent. However, summary judgment for the sellers was affirmed on a claim of unfair and deceptive trade practice because they did not become realtors engaged in trade or commerce simply by selling their property.

**7. Corporations— real estate development companies—not alter egos of realtor owners**

Real estate development companies were not the alter egos of two defendants who owned a real estate brokerage and who were partial owners of the development companies where the owners of the development companies were not acting as agents for the development company when dealing with plaintiffs. The action arose from plaintiffs' purchase through the brokerage of a coastal property with an ocean view across a tract that was about to be developed.

Appeal by plaintiffs from order entered 24 February 2009 by Judge Russell Lanier, Jr. and orders entered 8 September 2009, 9 September 2009, and 8 October 2009 by Judge John E. Nobles, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 1 September 2010.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Tobias S. Hampson, and Edward Eldred, for plaintiffs-appellants.*

*Rose Rand Wallace Attorneys, P.A., by P. C. Barwick, Jr. and Kimberly Connor Benton, for defendants-appellees Wayne Driver, John Vann Parker, Jr., John Vann Parker, Roy K. Parker, Coastland Realty, Inc., and Century 21 Coastland Realty, Inc.*

*Richard L. Stanley for defendant-appellee Block 39, LLC.*

*Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, III and Chadwick I. McCullen, for defendant-appellee BP2, Inc.*

*Michael Lincoln, P.A., by Michael Lincoln, for defendants-appellees Henry L. Reaves, Jr. and Susan A. Reaves.*

GEER, Judge.

**SUTTON v. DRIVER**

[211 N.C. App. 92 (2011)]

Plaintiffs Roger Sutton and Terri Sutton (the "Suttons") appeal from orders granting summary judgment as to all defendants. In their complaint, the Suttons alleged fraud, negligent misrepresentation, and unfair and deceptive trade practices in connection with their purchase of a house owned by defendants Henry L. Reaves, Jr. and Susan A. Reaves (the "Reaveses") that had an unobstructed view of the ocean. The Suttons contended that, in order to induce the Suttons to complete the sale, defendants withheld information material to their decision to purchase the property: that defendants Roy K. Parker and John Vann Parker ("Vann Parker")—owners of the real estate agency that had entered into an agency agreement with the Suttons—were in negotiations (through defendants BP2, Inc. and later Block 39, LLC) to purchase and develop the vacant tract of land adjacent to the property purchased by the Suttons.

We hold that the Suttons have presented sufficient evidence to give rise to a genuine issue of material fact as to defendants Roy Parker, Vann Parker, Wayne Driver, Coastland Realty, Inc., and Century 21 Coastland Realty, Inc. ("the broker defendants") based on the duties arising out of their agreement to act as the Suttons' agents. While the evidence is sufficient to go to the jury as to the Parkers and as to Coastland Realty, Inc. and Century 21 Coastland Realty, Inc. (collectively "Coastland") on all the Suttons' claims, the Suttons have not pointed to any evidence that defendant Wayne Driver in fact knew of the Parkers' intent and actions. With respect to Mr. Driver, we affirm as to the fraud claim, but reverse as to the negligent misrepresentation and unfair and deceptive trade practices claims. We reverse the grant of summary judgment for defendants Roy and Vann Parker, Coastland Realty, Inc., and Century 21 Coastland Realty, Inc. as to all claims.

The trial court also erred in granting summary judgment in favor of the Reaveses. The Reaveses may be held liable to the Suttons based on principles of agency since the broker defendants also acted as the Reaveses' agents. The Suttons have not, however, offered a basis for holding the Reaveses liable for unfair and deceptive trade practices. Consequently, summary judgment is affirmed as to the Reaveses on the unfair and deceptive trade practices claim, but reversed as to fraud and negligent misrepresentation.

We agree with the trial court that summary judgment was proper as to Block 39, LLC and BP2 on all claims. The Suttons have made no showing of any duty owed to them by Block 39, LLC and BP2. The companies cannot be held liable for the acts of Roy Parker and Vann

Parker (the "Parkers") based on *respondeat superior*—as the Suttons argue—because the Parkers' acts giving rise to the claims of fraud, negligent misrepresentation, and unfair and deceptive trade practices were not performed while acting within the scope of their authority as employees or officers of Block 39, LLC and BP2 or in furtherance of the business of Block 39, LLC or BP2. We, therefore, affirm the trial court's summary judgment order as to Block 39, LLC and BP2.

## Facts

In April or May 2005, Roy and Vann Parker, who are brothers, approached David Barefield about acquiring and developing a piece of property on Emerald Isle identified as Block 39. The three men formed BP2 for this purpose. After these three individuals, along with two other potential investors identified by Mr. Barefield, decided that they were interested in buying Block 39, Roy Parker approached the owners of Block 39. He learned that Block 39's owners were accepting bids on the property. On 30 June 2005, BP2 made a bid, signed by Vann Parker, to purchase Block 39 for $21 million.

During the same time frame, the Suttons began to search for a beach house on Emerald Isle after their C.P.A. advised them to purchase one as an investment. The Suttons were referred to Roy Parker of Coastland. Roy and Vann Parker are the owners of Coastland. Wayne Driver, an agent with Coastland, was assigned to work with the Suttons. Roy Parker was Mr. Driver's immediate supervisor and Vann Parker was Coastland's broker-in-charge and Mr. Driver's father-in-law.

The Suttons entered into a Buyer's Agency Contract with Coastland on 26 May 2005. The agreement provided that the Suttons would conduct all negotiations for residential property through Coastland, as their "exclusive agent." The agreement also set out Coastland's duties. Paragraph seven of the agreement provided that "[d]uring the term of this Agreement, [Coastland] shall promote the interests of [the Suttons] by . . . *(d) disclosing to [the Suttons] all material facts related to the property or concerning the transaction of which [Coastland] has actual knowledge . . . .*" (Emphasis added.)

When the Suttons became discouraged and indicated that they were considering ending their search, Mr. Driver let Roy Parker, his supervisor, know. Mr. Parker suggested that his neighbors, the Reaveses, might be willing to sell their beach house at 105 Wiley Court ("Wiley Court property").

Mr. Driver first showed the house to Mrs. Sutton who was immediately interested in it because of its unobstructed view from the top deck of the ocean over the adjacent undeveloped tract of land. That piece of undeveloped land was Block 39. Subsequently, Mr. Driver showed the house to Mr. Sutton and, as they were on the deck looking at the view, Mr. Sutton asked Mr. Driver who owned the undeveloped tract. Mr. Sutton testified in his deposition that Mr. Driver told him that Block 39 was owned by a trust and "would probably never be sold" and that if it "were ever sold it would probably be years down the road." Mr. Driver also told Mr. Sutton that the trust had been offered $14 million for 17 or 18 acres and had turned down the offer.

Mr. Driver testified that he told Mr. Sutton that he did not know whether Block 39 would be developed. Although Mr. Driver had been keeping Roy Parker informed about the progress of the Suttons' search, Mr. Driver testified that he did not tell Roy Parker about Mr. Sutton's questions "because [he] felt like [he] had to answer truthfully to [Mr. Sutton] when [they] were on the deck."

On 5 June 2005, the Suttons and Coastland signed a Dual Agency Agreement allowing Coastland to serve as the agent for both the Suttons and the owners of the Wiley Court property, the Reaveses. The Reaveses in turn signed the Dual Agency Agreement on 6 June 2005. The paragraph describing the broker's dual agent role provided that both the seller and the buyer of the house understood and acknowledged:

    (a)  Prior to the time Dual Agency occurs, [Coastland] will act as the exclusive Agent of Seller and/or Buyer;

    (b)  In those separate roles Broker may obtain information which, if disclosed, could harm the bargaining position of the party providing such information to Broker;

    (c)  *Broker is required by law to disclose to Buyer and Seller any known or reasonably ascertainable material facts.*

(Emphasis added.)

On 6 June 2005 the Suttons made an offer to purchase the Wiley Court property for $735,000.00. Mr. Driver took the offer to Roy Parker who was the listing agent for the Reaveses. Although the Reaveses had listed the property for $775,000.00, they accepted the Suttons' offer. The parties entered into a contract for the purchase and sale of the property on 15 June 2005. The Suttons closed on the property on 10 or 11 August 2005.

With respect to Block 39, the tract's owners accepted BP2's bid and entered into a contract for the sale of Block 39 on 5 July 2005. Shortly thereafter, BP2 and two other investors formed a new company, Block 39, LLC. On 11 July 2005, Block 39, LLC filed a rezoning application with the Town of Emerald Isle seeking to rezone Block 39 as residential. Block 39, LLC closed on the Block 39 property on 13 October 2005. Block 39 was subdivided into 46 lots and became a residential subdivision called "Sea Oats." Coastland is responsible for marketing the property.

As a result of the development of Block 39, the value of the Suttons' house has decreased. In an affidavit, Dana Outlaw, a certified real estate appraiser, stated that as of 10 August 2005, the property had a value of $720,000.00 because of its unobstructed view. At the time of the affidavit, two houses had been built on Block 39, partially obstructing the view and resulting in a market value of $695,000.00. The Outlaw affidavit indicated that once Sea Oats is fully developed, the view from the Suttons' house would be completely obstructed. With a completely obstructed view, the house had a value of $570,000.00.

The Suttons filed a complaint on 2 June 2008, asserting claims for fraud, negligent misrepresentation, unfair and deceptive trade practices, and "alter ego" (with respect to the claims against Coastland, Block 39, LLC, and BP2). The Suttons alleged in their complaint that defendants conspired to sell them the Wiley Court property, and in order to complete the sale, defendants failed to disclose key information that was either known, or should have been known, by defendants at the time of the sale.

Block 39, LLC filed a motion to dismiss and for judgment on the pleadings on 1 July 2008. Block 39, LLC argued that it did not legally exist until 13 July 2005, after the alleged fraud or misrepresentation, and therefore could not be liable to the Suttons. The trial court entered an order on 24 February 2009, holding that Block 39, LLC was "entitled to judgment on the pleadings or summary judgment as a matter of law."

The Reaveses filed an answer and a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(6), dated 4 August 2008, and a motion for summary judgment dated 20 July 2009. In an order entered 8 October 2009, the trial court granted summary judgment in favor of the Reaveses.

The broker defendants (Mr. Driver, the Parkers, and Coastland) filed an answer and a motion to dismiss pursuant to Rule 12(b)(6),

dated 25 August 2008, and a motion for summary judgment dated 10 July "2090." In an order entered 9 September 2009, the trial court granted summary judgment in favor of the broker defendants.

BP2 filed an answer, a motion to dismiss pursuant to Rule 12(b)(6), and a motion for summary judgment dated 6 August 2009. In an order entered 8 September 2009, the trial court granted summary judgment in favor of BP2. The Suttons appeal from each of these orders granting summary judgment.

## Discussion

"It is well established that the standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (internal quotation marks omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The moving party has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). Both before the trial court and on appeal, the evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. *Id.* We review the trial court's grant of summary judgment de novo. *Shroyer v. County of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002).

### A. *The Broker Defendants*

[1] Fifty years ago, our Supreme Court held that "[t]here is involved in the relation of real estate broker and client a measure of trust analogous to that of an attorney at law to his client, or agent to his principal." *State v. Warren*, 252 N.C. 690, 695, 114 S.E.2d 660, 665 (1960). More recently, this Court held that "[i]t is now well settled that a broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself." *Kim v. Prof'l Bus. Brokers Ltd.*, 74 N.C. App. 48, 51-52, 328 S.E.2d 296, 299 (1985). *See also Spence v. Spaulding & Perkins, Ltd.*, 82 N.C. App. 665, 667, 347 S.E.2d 864, 865 (1986) ("A real estate broker stands in a relation of trust and confidence to his principal. In all matters

relating to his agency a broker owes his principals an obligation of utmost fidelity and good faith." (internal citation omitted)).

It is well established that specific duties arise from this fiduciary relationship between a real estate broker and his or her client:

> A real estate agent has the fiduciary duty "to exercise reasonable care, skill, and diligence in the transaction of business [e]ntrusted to him, and he will be responsible to his principal for any loss resulting from his negligence in failing to do so." 12 C.J.S. *Brokers* § 53, at 160 (1980). "The care and skill required is that generally possessed and exercised by persons engaged in the same business." *Id.*, § 53, at 161. This duty requires the agent to "make a full and truthful disclosure [to the principal] of all facts known to him, or discoverable with reasonable diligence" and likely to affect the principal. *Id.*, § 57, at 172; James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* '8-9, at 243 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 4th ed. 1994) [hereinafter *Webster's Real Estate Law in North Carolina*] (agent has duty to disclose all facts he "knows or should know would reasonably affect the judgment" of the principal). The principal has "the right to rely on his [agent's] statements," and is not required to make his own investigation. 12 C.J.S. *Brokers* § 57, at 172.

*Brown v. Roth*, 133 N.C. App. 52, 54-55, 514 S.E.2d 294, 296 (1999). In sum, under *Brown*, a real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client. And, the client may rely upon the broker to comply with this duty and forego his or her own investigation. *See also Spence*, 82 N.C. App. at 667, 347 S.E.2d at 865-66 ("A broker has the duty not to conceal from his principals any material information and to make full, open disclosure of all such information.").

Consequently, since the Suttons had entered into a Buyer's Agency Contract with Coastland on 26 May 2005, Coastland had a duty to make a full and truthful disclosure to the Suttons of all material facts (1) known to Coastland, or (2) discoverable by Coastland with reasonable diligence. The contract in fact confirmed this duty by stating that Coastland would promote the interests of the Suttons by "disclosing to [the Suttons] all material facts related to the property . . . of which [Coastland] has actual knowledge . . . ." In addition, *Brown* establishes that because of the fiduciary relationship, the Suttons

were not required to conduct any investigation, but rather were entitled to rely upon Coastland.[1]

To the extent that the broker defendants have argued that the Dual Agency Agreement, entered into 5 June 2005, negated their fiduciary duty and duty of disclosure to the Suttons, *Brown* forecloses their argument. According to *Brown*, which specifically addressed dual agency, "[a] broker acting as a dual agent may still be liable in damages to one of the parties for a breach of duty to such party by reason of his acts in the course of the transaction. In other words, the dual agent owes all fiduciary and other agency duties to both principals." 133 N.C. App. at 55, 514 S.E.2d at 296 (internal citation and quotation marks omitted). The Court continued: "Thus [the real estate agent] had a fiduciary obligation to make a full and truthful disclosure to [the client] of all material facts, with regard to the Property, known by it or discoverable with reasonable diligence." *Id.*

The Suttons presented evidence that at the time Roy Parker steered the Suttons to the Wiley Court property and prior to the Suttons' making an offer on that property, Roy Parker, who was supervising the Coastland agent working with the Suttons, and Vann Parker, Coastland's broker-in-charge, knew that the owners of Block 39 were soliciting bids for the property. Further, the Parkers knew that they had plans to try to purchase Block 39 and develop it. The Suttons also offered evidence that, at that same time, Mr. Driver was telling Mr. Sutton that Block 39 was owned by a trust, "would probably never be sold," and if it "were ever sold[,] it would probably be years down the road."

In addition, only two weeks after the Suttons and the Reaveses entered into a contract for the Wiley Court property at a purchase price of $735,000.00, the Parkers, through BP2, offered to purchase

---

1. None of the cases cited by the broker defendants regarding reasonable reliance involve the fiduciary broker-client relationship and, therefore, are irrelevant. *See John v. Robbins*, 764 F. Supp. 379, 390 (M.D.N.C. 1991) ("[Defendant brokers] may not evade their duty to communicate directly to their principals simply by demonstrating the material information was otherwise available to [their clients]."). To the extent that the broker defendants are suggesting that *Brown* should not mean what it says, that argument must be raised with the Supreme Court and not this Court. In addition, the broker defendants' argument, couched in terms of reasonable reliance, which is still an element of fraud, addresses only Mr. Driver's representations and ignores the Suttons' claims based on non-disclosure. *See Forbis v. Neal*, 361 N.C. 519, 525, 649 S.E.2d 382, 386 (2007) ("When, as here, the fraud is allegedly committed by the superior party to a confidential or fiduciary relationship, the aggrieved party's lack of reasonable diligence may be excused.").

Block 39 for $21 million, which exceeded the last offer rejected by Block 39's owners by $7 million. Finally, *a month before the Suttons closed on the property*, the Parkers knew that Block 39's owners had accepted BP2's bid and that BP2 had successfully entered into a contract for the purchase of Block 39. Also prior to the Suttons' closing, the Parkers' new company, Block 39, LLC, sought to rezone the property to permit a residential subdivision. In sum, prior to the Suttons spending $735,000.00 on the Wiley Court property, which had an unobstructed view of the ocean across Block 39, the Parkers knew, but did not disclose to the Suttons, that Block 39 would soon be developed and the view obscured.

The broker defendants' duty to disclose this information, if material, was not affected by the fact that the information arose out of the Parkers' business dealings separate from their real estate agency. Because of the fiduciary relationship, if the Parkers' development plans would materially affect their clients' decision to purchase the property and the price to be paid for the property, then a duty to disclose the information obtained in the course of those development plans still arose. *See Edwards v. West*, 128 N.C. App. 570, 572, 574, 495 S.E.2d 920, 922, 924 (upholding unfair and deceptive trade practices verdict against real estate agency, controlled by individual defendant, for failing to disclose to plaintiffs, who were purchasing subdivision lot from second company owned by individual defendant, that size of lot had changed), *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998).

For purposes of the summary judgment motion, the only significant issue, under *Brown* and *Spence*, is whether this information was material. While Mr. Driver was telling the Suttons, who were buying the property as an investment, that the Block 39 owners had rejected a significant offer, and the property might not be developed for years, Coastland's owners knew for a fact that the Block 39 owners were soliciting bids and, prior to closing, that a bid had been accepted, a sales contract had been entered into, and a residential subdivision would likely soon be built.

A non-disclosed fact is material when " 'the fact . . . wrongfully suppressed if it had been known to the party [would have] influenced his judgment or decision in entering the contract.' " *John*, 764 F. Supp. at 387 (quoting *Homelite v. Trywilk Realty Co.*, 272 F.2d 688, 691 (4th Cir. 1959)). We cannot conclude that information that the last undeveloped maritime tract on Emerald Isle, which adjoined the Wiley Court property, was likely being sold and developed into a sub-

division would not have influenced the Suttons' judgment or decision in buying the Wiley Court property.

While defendants stress that the Suttons were not seeking a house with an ocean view because they could not afford it, that fact is beside the point. The Suttons presented evidence that the future existence or non-existence of the view significantly affected the value of the Wiley Court property. Indeed, the Outlaw affidavit indicates that the Suttons paid $150,000.00 too much for the Wiley Court property given that its view was going to be extinguished. A jury could reasonably find that the nondisclosed information, if known by the Suttons, would have, at a minimum, affected the amount that the Suttons were willing to spend to purchase the property. *See John*, 764 F. Supp. at 390 (holding that information was material to determining appropriate sales price for home); *Powell v. Wold*, 88 N.C. App. 61, 62, 68, 362 S.E.2d 796, 796-97, 800 (1987) (holding that buyers stated claims for fraud, negligent misrepresentation, and unfair and deceptive trade practices when buyers alleged that they asked whether any factor existed that could adversely affect value of property in future and realtor did not disclose that major road extension was planned in vicinity of property).

In addition, the broker defendants have argued that the Suttons were aware that a $14 million offer had been made on the property, although rejected, and that a "For Sale" sign was posted on the property. They argue that the Suttons were, as a result, aware that Block 39 was for sale and could be purchased and developed at any time. The Suttons, however, presented evidence that Mr. Driver had told them that Block 39 "was owned by a land trust and would probably never be sold" and that "if [Block 39] were ever sold it would probably be years down the road . . . ." In addition, Mr. Driver pointed out to them that the owners had recently rejected a $14 million offer. Although Mr. Driver's recollection differed from that of Mr. Sutton's, Mr. Driver still testified that he told Mr. Sutton that he did not know whether the property would be developed. As for the "For Sale" sign, Mr. Driver acknowledged that the sign had been on the property for 10 years or more. When this evidence is viewed in the light most favorable to the Suttons, it would permit a jury to find that the Suttons did not know that the property was likely to be sold and developed in the near future.

[2] Turning to the Suttons' specific claims for relief, as our Supreme Court has observed, "[w]hile actual fraud has no all-embracing definition, the following essential elements of actual fraud are well estab-

lished: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis*, 361 N.C. at 526-27, 649 S.E.2d at 387 (internal quotation marks omitted). "Additionally, any reliance on the allegedly false representations must be reasonable. The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.* at 527, 649 S.E.2d at 387 (internal citation omitted).

In contending that summary judgment was proper on the fraud claim, the broker defendants have focused on whether there was a false misrepresentation of a material fact. The Suttons have, however, presented evidence that the broker defendants failed to disclose material facts that they had a duty to disclose. *Brown* establishes that their reliance on the broker defendants was reasonable.

Although the broker defendants make no argument regarding the intent element, we believe that the Suttons have forecast sufficient evidence of intent as to Coastland and the Parkers based on the evidence that Roy Parker caused the Suttons to be steered to the Wiley Court property at precisely the same time he and Vann Parker, Coastland's broker-in-charge, were working to purchase the neighboring Block 39 property; that the Reaveses (whose listing agent was Roy Parker for Coastland) accepted an offer $40,000.00 less than their asking price without making any counteroffer; and that no disclosure regarding the Parkers' company entering into a contract for the purchase of Block 39 was made to the Suttons between the time they entered into the contract and closed on the Wiley Court property. We hold that this evidence would permit a finding that the nondisclosure was reasonably calculated to deceive and did deceive the Suttons into purchasing the property, especially at a higher price.

The broker defendants have not disputed that Coastland may be held liable based on the acts of Roy and Vann Parker. Nor have they made any specific argument regarding Roy and Vann Parker's liability as brokers. Since there is no dispute that the Suttons were actually deceived and were damaged, we reverse the trial court's entry of summary judgment for Coastland, Roy Parker, and Vann Parker on the fraud claim. Necessarily, because the evidence could permit a jury to find that the Parkers (and Coastland) acted negligently rather than intentionally, we also reverse the summary judgment order as to these defendants on the negligent misrepresentation claim.

**[3]** The broker defendants do, however, make further arguments regarding Mr. Driver's liability. The Suttons have pointed to no evidence that Mr. Driver was aware of Roy and Vann Parker's actions regarding Block 39 or the imminency of any sale of Block 39. At most, the Suttons argue that Mr. Driver avoided acquiring knowledge. They do not, however, explain in what way Mr. Driver's actions constituted fraud as opposed to negligence. We, therefore, hold that the trial court properly granted summary judgment to Mr. Driver on the fraud claim. *See Brown*, 133 N.C. App. at 56, 514 S.E.2d at 297 ("Because there is no evidence in this record that Defendant knew it had communicated false square footage information to Plaintiff, summary judgment on the fraud and unfair and deceptive trade practices claims was proper.").

**[4]** With respect, however, to the negligent misrepresentation claim, even though Roy Parker was Mr. Driver's supervisor and even though Mr. Driver had been keeping Mr. Parker informed of his progress with the Suttons, Mr. Driver did not talk to Mr. Parker about Mr. Sutton's questions regarding the possible development of Block 39 because, as Mr. Driver admitted in his deposition: "I felt like I had to answer truthfully to them when we were on the deck." The broker defendants argue as to this testimony: "The Suttons have interpreted this statement to mean that Driver did not want to learn facts which contradicted his original opinion. Driver did not speak to Roy Parker about this issue because he had given his personal opinion while on the third floor deck and he thought he had answered Roger Sutton's question truthfully."

Mr. Driver's testimony is, as the broker defendants implicitly acknowledge, a matter of interpretation for the jury. It is up to a jury to decide why Mr. Driver did not speak to Roy Parker and whether, when he did not do so, he failed to act with reasonable diligence to uncover material information.

**[5]** As for the Suttons' unfair and deceptive trade practices claim, it is well established that " '[p]roof of fraud necessarily constitutes a violation of the prohibition against unfair and deceptive trade practices.' " *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 484, 593 S.E.2d 595, 601 (quoting *Webb v. Triad Appraisal & Adjustment Serv., Inc.*, 84 N.C. App. 446, 449, 352 S.E.2d 859, 862 (1987)), *disc. review denied*, 358 N.C. 543, 599 S.E.2d 48, 49 (2004). In addition, this Court has held that "[a] claim of unfair and deceptive trade practice can be established against realtors by proving either fraud *or negligent misrepresentation* in the commercial setting."

*Edwards*, 128 N.C. App. at 575, 495 S.E.2d at 924 (emphasis added).[2] We, therefore, reverse summary judgment as to all of the broker defendants on the claim of unfair and deceptive trade practices.

B. *Mr. and Mrs. Reaves*

**[6]** Reversal of summary judgment as to the broker defendants requires reversal as to the Reaveses as well with respect to the claims of fraud and negligent misrepresentation. As the United States District Court for the Middle District of North Carolina has explained in the real estate context: "North Carolina decisions have generally ruled the principal is liable for the fraudulent acts of his real estate agent." *John*, 764 F. Supp. at 394 (citing *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284-85 (1964)).

In *Norburn*, the Supreme Court concluded that the property owner could be liable for an agent's misrepresentation to a potential purchaser of the property based on "[t]he general rule . . . that a principal is responsible to third parties for injuries resulting from the fraud of his agent committed during the existence of the agency and within the scope of the agent's actual or apparent authority from the principal, even though the principal did not know or authorize the commission of the fraudulent acts." 262 N.C. at 23, 136 S.E.2d at 284-85. *See also Vickery v. Olin Hill Constr. Co.*, 47 N.C. App. 98, 101-02, 266 S.E.2d 711, 714 ("If the jury should find that plaintiffs were injured by the fraudulent representations of [the real estate agent], then both [the real estate agency and the property owner], as principals, must be held answerable for the fraudulent act of their agent."), *disc. review denied*, 301 N.C. 106 (1980).

The Suttons are not, however, entitled to proceed on their unfair and deceptive trade practices claim against the Reaveses as the homeowners. *See Rosenthal v. Perkins*, 42 N.C. App. 449, 454, 257 S.E.2d 63, 67 (1979) ("The defendants [homeowners] were not engaged in trade or commerce. They did not by the sale of their residence on this one occasion become realtors. It is clear from the cases involving violation of the Unfair Trade Practices Act that the alleged violators must be engaged in a business, a commercial or industrial establishment or enterprise."). We, therefore, affirm the entry of summary judgment for the Reaveses on the unfair and deceptive trade practices claim.

---

2. In *Brown*, the Court upheld summary judgment on both the fraud and the unfair and deceptive trade practices claims even though a negligent misrepresentation claim survived because the plaintiff had only argued fraud as a basis for the unfair and deceptive trade practices claim. 133 N.C. App. at 56 n.3, 514 S.E.2d at 297 n.3.

C. *Block 39, LLC and BP2, Inc.*

[7] In their complaint, the Suttons claimed BP2 and Block 39, LLC were the alter egos of the Parkers because they were undercapitalized and corporate formalities were not followed. On appeal, however, the Suttons have pointed to no evidence that supports this claim. Instead, the Suttons argue that BP2 and Block 39, LLC are liable for the acts of the Parkers based on *respondeat superior*.

This theory fails, however, because the Suttons have not shown that the Parkers were acting as agents of BP2 or Block 39, LLC when dealing with the Suttons. "A principal is liable for torts of his agent when the agent commits a negligent act within the scope of the agent's employment and in furtherance of the principal's business." *Felts v. Hoskins*, 115 N.C. App. 715, 717, 446 S.E.2d 110, 111-12 (1994) (holding employer not liable for negligence of vice president resulting in accident because employee was not acting as agent at time of accident). More specifically,

"[u]nder the doctrine of respondeat superior, a principal is liable for the torts of its agent which are committed within the scope of the agent's authority, when the principal retains the right to control and direct the manner in which the agent works. Of course, respondeat superior does not apply unless an agency relationship of this nature exists."

*Holleman v. Aiken*, 193 N.C. App. 484, 504, 668 S.E.2d 579, 592 (2008) (quoting *Phillips v. Rest. Mgmt. of Carolina, L.P.*, 146 N.C. App. 203, 216, 552 S.E.2d 686, 695 (2001), *disc. review denied*, 355 N.C. 214, 560 S.E.2d 132 (2002)).

Here, the Parkers were acting in their capacity as agents of Coastland when the purported fraud and negligence occurred. The Suttons have pointed to no evidence (1) that the Parkers were acting within the scope of any authority granted to them by BP2 or Block 39, LLC, (2) that the Parkers were acting in furtherance of the business of BP2 or Block 39, LLC, or (3) that BP2 or Block 39, LLC possessed the right to control or direct the actions of the Parkers in connection with their interactions with the Suttons. Without such evidence, the Suttons have failed to establish any basis for imposing liability on either BP2 or Block 39, LLC based on *respondeat superior*.

The Suttons rely on *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 654, 273 S.E.2d 268, 272 (1981), and its holding "that when the interests of the individual officer or director are so clearly aligned with those of the

corporation, the corporation is properly charged with the knowledge of the individual." In *Hice*, the plaintiff sold approximately 900 acres of property to the defendant corporation. *Id.* at 652, 273 S.E.2d at 271. The deed mistakenly also conveyed a noncontiguous tract of approx-imately 13 acres. *Id.* The plaintiff's attorney later notified the sole owner of the defendant corporation of the mistake in an attempt to correct the deed. *Id.* The Supreme Court held that the corporation was charged with this knowledge and, therefore, was not a bona fide purchaser. *Id.* at 654, 273 S.E.2d at 272.

The issue in *Hice* was thus only whether the principal could be charged with the knowledge of its agent. It did not address the issue here: whether the principal could be held liable for torts committed by one of its agents when acting outside the scope of his employment and not in furtherance of the principal's business or under the principal's direction and control. *Hice* did not purport to change the law of agency and, therefore, is not controlling in this case.

### Conclusion

In sum, we affirm the trial court's entry of summary judgment as to defendants BP2 and Block 39, LLC as to all claims. We reverse the grant of summary judgment for defendants Coastland, Roy Parker, and Vann Parker as to all claims. We affirm the entry of summary judgment as to Wayne Driver on the fraud claim, but reverse it as to the negligent misrepresentation and unfair and deceptive trade practices claims. With respect to the Reaveses, we affirm summary judgment as to the unfair and deceptive trade practices claim, but reverse it as to fraud and negligent misrepresentation.

Affirmed in part; reversed in part.

Judges McGEE and CALABRIA concur.