**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1541**

JONATHAN RUSSEL FOLMAR; MARGARET FOLMAR,

Plaintiffs - Appellants,

v.

SARAH HARRIS, individually and as an agent for Cooke Realty,
Inc.; COOKE REALTY, INC.,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington. James C. Dever III,
Chief District Judge. (7:14-cv-00256-D)

Argued: May 10, 2016               Decided: May 31, 2016

Before MOTZ, KING, and HARRIS, Circuit Judges.

Affirmed in part and reversed and remanded in part by
unpublished per curiam opinion.

**ARGUED**: Fred William DeVore, IV, DEVORE, ACTON AND STAFFORD,
P.A., Charlotte, North Carolina, for Appellants. Clay Allen
Collier, CROSSLEY MCINTOSH COLLIER HANLEY & EDES, PLLC,
Wilmington, North Carolina, for Appellees. **ON BRIEF**: Jarrett W.
McGowan, CROSSLEY MCINTOSH COLLIER HANLEY & EDES, PLLC,
Wilmington, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jonathan and Margaret Folmar, buyers of a North Carolina home, brought this suit against their real estate agent, Sarah Harris, and her real estate company, Cooke Realty, alleging fraud, misrepresentation, breach of fiduciary duty, and deceptive trade practices, and seeking punitive damages. The district court granted the realtors' motion to dismiss on issue preclusion grounds, relying on the Folmars' earlier suit in state court against the sellers of the house. For the reasons that follow, we affirm in part and reverse and remand in part.

I.

In 2012, the Folmars agreed to purchase a home on the coast of North Carolina from Samuel and Louise Kesiah. Harris, through her employer Cooke Realty, acted as a dual agent for both the Folmars and the Kesiahs. Prior to closing on the property, the Kesiahs stated in a disclosure form that they did not know of any problems with "things such as the foundation, slab, floors, windows, doors, ceilings, interior and exterior walls, patio, deck, or other structural components." Soon after receiving the disclosure form, the Folmars commissioned an independent home inspection. The resulting inspection report noted various issues, including that "some of the siding is missing and there is some wood rot on the wall above front

2

door"; "[u]pstairs door off the master has some wood rot and is very hard to open"; "[t]he window on the back left side looks to have water entering from the top of the window, staining is inside of window. Possible hidden damage may exist." The inspection report recommended that "[e]ach issue indicated in this summary [] be evaluated by a qualified contractor or specialist for corrective measures to insure proper and safe use or service of the system in question."

After the inspection report but before closing, the Folmars hired Daryl Moffett to complete some minor repair work on the home after closing. Moffett met with Harris at the house before closing to get a better idea of the work required. While on the property, Moffett noticed a deteriorated section of siding next to the front door. As Moffett stood next to Harris, he pressed his hand against the wall and "a piece of wall cladding fell off, exposing rotted oriented strand board (OSB) sheathing." Harris tried unsuccessfully to reattach the piece to the wall, and then told Moffett that the rotting sheathing had already been listed on the home inspection report. The Folmars allege that, despite Harris' fiduciary obligations, Harris never reported the issue to them.

The Folmars proceeded to close on the home. After discovering the extent of the home's hidden structural damage, they brought suit in North Carolina state court against the

Kesiahs, Harris, and Cooke Realty ("Folmar I"). Against the Kesiahs, the Folmars alleged fraud, misrepresentation, and breach of contract; against Harris and Cooke Realty, they alleged fraud, misrepresentation, breach of fiduciary duty, and unfair and deceptive trade practices. The Folmars sought punitive damages against all parties.

The state trial court granted summary judgment for the Kesiahs and the Folmars voluntarily dismissed their claims against Harris and Cooke Realty without prejudice. The North Carolina Court of Appeals affirmed the trial court's judgment, noting that even if the Kesiahs knew of the defects before they sold the property to the Folmars, the Folmars' reliance on the Kesiahs' representation that they knew of no structural defect was not reasonable in light of the Folmars' independent home inspection report.

The Folmars then filed the instant action against Harris and Cooke Realty in federal district court, again alleging fraud, misrepresentation, breach of fiduciary duty, and deceptive trade practices against both Harris and Cooke Realty, and seeking punitive damages against Harris. Harris and Cooke Realty moved to dismiss, arguing that the Folmars' previous state suit precluded them from bringing these claims. In a brief order and judgment, the district court granted the

4

Appellees' motion and dismissed the case on issue preclusion grounds.

The Folmars noted this timely appeal.

II.

On appeal, the Folmars argue that their suit against Harris and Cooke Realty involves different issues than their suit against the Kesiahs, and that the district court therefore erred in granting the motion to dismiss on issue preclusion grounds. Harris and Cooke Realty (Appellees) respond that "the issue of reasonable reliance [] is an essential and material element to each of [the Folmars'] claims," and that "[b]ecause this issue was resolved against them in the prior action, Appellants are barred from relitigating the issue in their favor in the current action." Appellees' Br. at 8.

We review issue preclusion arguments de novo. United States v. Fiel, 35 F.3d 997, 1005 (4th Cir. 1994). For judgments in diversity cases, as we have here, a federal court looks to state preclusion law. Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008). In North Carolina, collateral estoppel (issue preclusion) "precludes relitigation of an issue decided previously in judicial or administrative proceedings, provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier

5

proceeding." <u>Rymer v. Estate of Sorrells</u>, 488 S.E.2d 838, 840 (N.C. App. 1997); <u>Thomas M. McInnis & Assoc., Inc. v. Hall</u>, 349 S.E.2d 552, 558 (N.C. 1986) (noting that North Carolina allows non-mutual defensive use of collateral estoppel).

For issue preclusion to apply, several factors must be met: "(1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment." <u>State v. Summers</u>, 528 S.E.2d 17, 20 (N.C. 2000). We address each of the Folmars' claims in turn to determine whether these requirements have been met.


III.

We turn first to the Folmars' fraud claim. To prove actual fraud in North Carolina, a party must show: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally, (6) plaintiff's reliance on any misrepresentations must be reasonable." <u>MacFadden v. Louf</u>, 643 S.E.2d 432, 434 (N.C. Ct. App. 2007) (alteration and internal

6

quotation marks omitted). In the context of property sales, "reliance is not reasonable if a plaintiff fails to make any independent investigation" unless the plaintiff can demonstrate (1) he "was denied the opportunity to investigate the property," (2) he "could not discover the truth about the property's condition by exercise of reasonable diligence," or (3) he "was induced to forego additional investigation by the defendant's misrepresentations." Id. (alteration and internal quotation marks omitted).[1]

For example, in MacFadden, home-purchasers brought suit against the home-sellers for alleged undisclosed defects in the property. Id. at 433. The court rejected the claim based on a lack of reasonable reliance: "Plaintiff failed to establish that her reliance was justifiable because she conducted a home inspection before closing and that inspection report put her on notice of potential problems with the home." Id. at 434. As in this case, the inspection report pointed out potential serious problems with the house and suggested having a contractor

---

[1] "As a federal court sitting in diversity, we are obliged to interpret and apply the substantive law of [the relevant] state." Food Lion v. Capital Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999). Where the state's highest court has not "applied its law to circumstances exactly like those presented in this case," we can look to state courts of appeals cases as persuasive in determining how the high court would decide these issues. Id. We do so here in the absence of on-point North Carolina Supreme Court case law.

7

further assess the property, but the MacFaddens conducted no additional inspection. Id. at 434-35. The Folmar I fraud claim against the Kesiahs essentially mirrored the facts of MacFadden and was dismissed on that basis.

On appeal here, the Folmars argue that the timing of the inspection report in relation to the fraudulent conduct distinguishes this case from Folmar I for issue preclusion purposes. The Folmars contend that while their reliance on the Kesiahs' statements was unreasonable because they received the Kesiahs' disclosure before the home inspection occurred, their reliance on Harris and Cooke Realty's fraudulent misrepresentations was reasonable because they occurred after the home inspection report. Because of this timing, the Folmars maintain that they reasonably could have relied on their realtors instead of the report. The Folmars also argue that these distinct factual bases render issue preclusion inappropriate here. See 18 James W. Moore et al., Moore's Federal Practice § 132.02[2][e] (3d. ed.) ("[A] difference in pertinent facts, sufficient to substantially change the issues, renders the doctrine of [collateral estoppel] inapplicable."). That is, Folmar I concerned the Kesiah's disclosure report and

their concealment of the rot with "new materials,"[2] while the instant case involves Harris's nondisclosure of the wall-cladding incident.

Regardless of whether the issues are identical for preclusion purposes, we conclude that the Folmars have failed to state a claim for fraud against Harris and Cooke Realty. North Carolina courts have consistently dismissed fraud claims against both sellers and realtors based on a purchaser's failure to reasonably investigate property, without considering the specific timing of the inspection report in relation to the fraud. See, e.g., Helms v. Holland, 478 S.E.2d 513, 517 (N.C. App. 1996); Rosenthal v. Perkins, 257 S.E.2d 63, 66 (N.C. App. 1979).

---

[2] In Folmar I, the North Carolina Court of Appeals described the fraud issue as follows:

[P]laintiffs assert that the Kesiah defendants falsely represented material facts: by marking "no" on the disclosure report which stated "to your knowledge, is there any problem (malfunction or defect)" with things such as the foundation, slab, floors, windows, doors, ceilings, interior and exterior walls, patio, deck, or other structural components; learning of the defects in the property sometimes after 2006 and intentionally listing the property below value to "entice buyers as opposed to correcting the defects"; previously performing work on the windows, sheathing, exterior walls, etc. prior to selling the home to plaintiffs and covering up existing rot with new materials; and having knowledge that many of the areas of the property were missing sheathing.

9

For example, in Robertson v. Boyd, 363 S.E.2d 672 (N.C. App. 1988), the Robertsons purchased a house from the Boyds through realtor Booth; when the Robertsons discovered extensive termite damage after moving in, they sued Booth and the Boyds for fraud, arguing that the defendants knew of the damage but concealed it. Id. at 675-76. The court dismissed the claims against both parties, explaining that, prior to closing, the Robertsons had obtained an inspection report that indicated termite damage and suggested further inspection. Id. at 676. The court did not undertake separate reliance analyses for sellers and realtor, nor did it discuss the timing of the report in relation to the realtors' alleged concealment. Rather, it simply reasoned that, because "the failure of the purchaser to make diligent inquiries when he has notice of a problem precludes a recovery for fraud," the trial court "did not err in dismissing plaintiffs' actions in fraud against all defendants." Id. (emphasis added). Applying this reasoning to the instant case, we must affirm the district court's dismissal of the fraud claim against Harris and Cooke Realty under North Carolina law.

IV.

We turn next to the Folmars' misrepresentation claim. "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared

10

without reasonable care by one who owed the relying party a duty of care." Hudson-Cole Dev. Corp. v. Beemer, 511 S.E.2d 309, 313 (N.C. App. 1999). North Carolina courts treat the "reliance" elements in fraud and misrepresentation cases as interchangeable. See McFadden, 643 S.E.2d at 435; Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 513 S.E.2d 320, 327 (N.C. App. 1999); Helms v. Holland, 478 S.E. 2d 513, 517 (N.C. App. 1996). Accordingly, we also affirm the district court's dismissal of the Folmars' misrepresentation claim against the Appellees.

V.

Next, we consider the Folmars' breach of fiduciary duty claim. To state a claim for breach of fiduciary duty in North Carolina, a plaintiff must show the existence of a fiduciary relationship between the parties, breach of a duty required by that relationship, and injury proximately caused by the breach. Dalton v. Camp, 548 S.E.2d 704, 707 (N.C. 2001); White v. Consol. Planning, Inc., 603 S.E.2d 147, 155 (N.C. App. 2004). On appeal, Harris and Cooke Realty argue that this "proximate cause" requirement is identical to the "reasonable reliance" element of fraud claims. For this reason, they contend that the state court's finding of no reasonable reliance precludes the

11

Folmars from arguing that proximate cause exists here.  We disagree.

"It is now well settled [in North Carolina] that a broker representing a purchaser or seller in the purchase or sale of property owes a fiduciary duty to his client based upon the agency relationship itself."  Kim v. Prof'l Bus. Brokers Ltd., 328 S.E.2d 296, 299 (N.C. App. 1985).  "[A] real estate broker has a duty to make full and truthful disclosure of all known or discoverable facts likely to affect the client.  And, the client may rely upon the broker to comply with this duty and forego his or her own investigation."  Sutton, 712 S.E.2d at 323; John v. Robbins, 764 F.Supp. 379, 390 (M.D.N.C. 1991) ("[Defendant brokers] may not evade their duty to communicate directly to their principals simply by demonstrating the material information was otherwise available to [their clients].").  Dual agents, like Harris and Cooke Realty, are subject to the same obligations because "[a] dual agent owes all fiduciary and other agency duties to both principals."  Brown v. Roth, 514 S.E.2d 294, 296 (N.C. App. 1999).

Because this fiduciary relationship places an affirmative burden on the realtor to disclose, regardless of outside information available to the client, "proximate cause" in the context of fiduciary breach cannot be coextensive with fraud's "reasonable reliance."  As discussed above, for fraud claims,

12

reliance on realtor conduct is not reasonable if the buyer has notice of a problem and fails to investigate himself; in contrast, under realtors' fiduciary duty, a realtor must disclose material information and the buyer "can forego his or her own investigation." Sutton, 712 S.E.2d at 323. Thus, the terms refer to very different spheres of legal responsibility on both the buyers' and the realtors' part. Cf. B & B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1306 (2015) ("[I]ssues are not identical [for preclusion purposes] if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same."). Put another way, any conception of "reasonable reliance" in the breach of fiduciary duty context must be defined differently than in fraud claims because we expect much more reliance on fiduciaries, by virtue of their positions of trust.

Because the state court in Folmar I did not assess any of the elements necessary for a breach of fiduciary duty claim, issue preclusion cannot prevent the Folmars from raising such a claim now against Harris and Cooke Realty. Accordingly, we reverse the district court's dismissal of this claim and remand for further proceedings.

13

VI.

The district court also dismissed the Folmars' claim of unfair trade practices as precluded. North Carolina General Statute § 75-1.1 provides in pertinent part that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To establish a prima facie claim for unfair trade practices, "a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton, 353 N.C. at 656.

Realtor conduct related to the selling and buying of houses qualifies as "affecting commerce," see Sutton, 712 S.E.2d at 326, and "North Carolina case law has held that conduct which constitutes a breach of fiduciary duty . . . is sufficient to support a UDTP claim." Compton v. Kirby, 577 S.E.2d 905, 917 (N.C. App. 2003); Robertson, 363 S.E.2d at 676. Because the Folmars' unfair trade practice claim is essentially derivative of their breach of fiduciary duty claim, which is not precluded, we hold that their unfair trade practices claim is also not precluded. We therefore reverse the district court's dismissal of this claim and remand for further proceedings.

14

## VII.

Finally, we turn to the Folmars' request for punitive damages against Harris. In North Carolina, punitive damages are awarded "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. Ann. § 1D-1 (2015). To obtain punitive damages, a plaintiff must show that a defendant is liable for compensatory damages as well as the presence of one or more "aggravating factors" -- fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15. Conduct underlying a breach of fiduciary duty can support an award of punitive damages, see HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 490 (N.C. 1991), as can conduct constituting unfair and deceptive trade practices, see Zubaidi v. Earl L. Pickett Enters., Inc., 595 S.E.2d 190, 193 (N.C. App. 2004).

As discussed above, Folmar I precludes neither the Folmars' claim for breach of fiduciary duty nor for unfair trade practices. We therefore conclude that their request for punitive damages based on those claims is not precluded. Accordingly, we reverse the district court's dismissal of the Folmars' punitive damages claim and remand.

15

## VIII.

In sum, we affirm the district court's dismissal of the Folmars' fraud and misrepresentation claims against Harris and Cooke Realty. We reverse the court's dismissal of the breach of fiduciary duty and the unfair trade practices claims against Harris and Cooke Realty and the request for punitive damages against Harris, and we remand those claims for further proceedings.

AFFIRMED IN PART AND
REVERSED AND REMANDED IN PART