BDM Invs. v. Lenhil, Inc., 2014 NCBC 6.

STATE OF NORTH CAROLINA

COUNTY OF BRUNSWICK

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 449

BDM INVESTMENTS,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )
                                    )
LENHIL, INC.; LENNON HILLS,         )
LLC; JUDITH T. HOLLINGSWORTH        )
in her official capacity as EXECUTRIX )
of the ESTATE OF GLENN              )        **ORDER AND OPINION**
HOLLINGSWORTH; EDWIN L.             )
BURNETT, III; VIABLE CORP.;         )
GARY LAWRENCE; KEITH                )
MEYERS; MEYERS APPRAISAL            )
SERVICES, LLC; and DANIEL           )
HILLA, III,                         )
                                    )
            Defendants.             )
                                    )

{1}     THIS MATTER is before the court on six motions: (1) Plaintiff BDM
Investments' Motion for Summary Judgment Against Lennon Hills Defendants; (2)
Plaintiff BDM Investments' Motion for Summary Judgment Against Estate of
Glenn Hollingsworth; (3) Defendant Judith T. Hollingsworth's, as Executrix of the
Estate of Glenn Hollingsworth, Motion for Summary Judgment on All Claims; (4)
Defendants Lenhil, Inc., Lennon Hills, LLC, Viable Corp., Edwin L. Burnett, III,
and Daniel Hilla, III's Motion for Summary Judgment; and (5) Defendant Gary
Lawrence's Motion for Summary Judgment—all made under Rule 56 of the North
Carolina Rules of Civil Procedure ("Rule(s)"); and (6) Plaintiff BDM Investments'
Motion to Amend Complaint and to Rescind and/or Amend Prior Order ("Motion to
Amend") made under Rules 15 and 54(b).

{2}     For the reasons explained below: (1) Plaintiff BDM's Motion for
Summary Judgment Against Lennon Hills Defendants is DENIED; (2) Plaintiff

BDM's Motion for Summary Judgment Against Estate of Glenn Hollingsworth is DENIED; (3) Defendant Judith T. Hollingsworth's, as Executrix of the Estate of Glenn Hollingsworth, Motion for Summary Judgment on All Claims is GRANTED in part and DENIED in part; (4) Defendants Lenhil, Inc., Lennon Hills, LLC, Viable Corp., Edwin L. Burnett, III, and Daniel Hilla, III's Motion for Summary Judgment is GRANTED in part and DENIED in part; (5) Defendant Gary Lawrence's Motion for Summary Judgment is GRANTED; and (6) BDM's Motion to Amend is GRANTED in part and DENIED in part.

*Bowden & Laws, PC by Edwin W. Bowden for Plaintiff BDM Investments.*

*Broadwell Phillips Potter, PLLC by Samuel B. Potter for Defendant Glenn Hollingsworth.*

*Hodges & Coxe, PC by C. Wes Hodges, II and Sarah Reamer for Defendants Lenhil, Inc., Lennon Hills, L.L.C., Edwin L. Burnett, III, Viable Corp., and Daniel Hilla, III.*

*Cranfill Sumner & Hartzog, LLP by Richard T. Boyette and Meghan N. Knight for Defendant Gary Lawrence.*

Gale, Judge.

## I.     INTRODUCTION

{3}     Plaintiff BDM Investments ("BDM"), a partnership organized by three practicing attorneys for the purpose of holding real estate assets and investments, seeks rescission of a land sale and damages related to its investment in undeveloped residential lots in the Lennon Hills subdivision in Brunswick County, North Carolina.

{4}     As noted in a prior Order, BDM "joined as Defendants essentially every individual or entity that had anything to do with or was necessary to complete" BDM's lot purchase. *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *2 (N.C. Super. Ct. Jan. 18, 2012). At the outset of this case, BDM alleged a vast

conspiracy among all Defendants to induce BDM to purchase lots. Most of the allegations supporting that claim centered around fraudulent acts allegedly perpetrated by some Defendants on individuals and entities entirely uninvolved in this litigation.

{5}     Discovery has ended and the Parties have submitted a voluminous record in support of the various summary judgment motions now pending before the court. After tedious review of that record, the court concludes that BDM may proceed to trial on much more limited issues than those raised in its pleadings. Out of the multitude of BDM's initial allegations, the evidence reveals one possible defect in the sales process that, if a jury finds caused the purchase, may allow BDM to rescind the transaction.

## II.     PROCEDURAL BACKGROUND

{6}     BDM filed its Complaint in Brunswick County on February 28, 2011. The case was designated as a Complex Business Case on April 8, 2011 and assigned to the undersigned on April 14, 2011. Plaintiffs later filed a Second Amended Complaint, the Parties filed numerous responsive pleadings and motions to dismiss, and the court entered its Order resolving those matters on January 18, 2012. The case then progressed into discovery, and the Parties filed the current motions over the course of last summer. The motions have been fully and extensively briefed (with leave of court for expanded word limitations), the court heard oral argument on December 17, 2013, and the motions are ripe for disposition.

## III.     FACTUAL BACKGROUND

{7}     The court does not make findings of fact when ruling on a motion for summary judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975). It is, however, appropriate for the court to describe the undisputed facts or lack of facts the record discloses in order to provide

context for the court's ruling on the motion. The court believes the following facts are uncontested.[1]

A. The Parties

{8} BDM is a general partnership of three practicing attorneys that holds various real estate assets. (King Dep. 8:6–21, Nov. 8, 2012 (hereinafter "King I").) Kenneth King ("King"), a prior Plaintiff in this case, managed BDM and represented it in the transaction at issue.[2] (King I 8:22–9:7.)

{9} Glenn Hollingsworth ("Hollingsworth") served as King's personal accountant in the 1990s and early 2000s, but never did any accounting work for BDM. (King I 209:18–213:20.) Hollingsworth passed away during the pendency of this litigation and his estate has been substituted as a Defendant. Defendant Viable Corp. ("Viable") employed Hollingsworth during the relevant time period. (Burnett Dep. 26:17–27:24.) Hollingsworth had a North Carolina real estate license during the relevant time period. (Aff. Judith Hollingsworth ¶ 19.)

{10} Defendants Lenhil, Inc. ("Lenhil") and Lennon Hills, LLC were created to own, develop, and sell lots in Lennon Hills, a residential subdivision in Brunswick County, North Carolina. (Def. Lenhil, Inc.'s Resps. Pl.'s First Req. Admis. ¶ 1.)

{11} Defendant Edwin L. Burnett ("Burnett") runs several real estate companies and business ventures in Brunswick County. (Burnett Dep. 14:24–18:7.) He is part-owner of Lenhil and Lennon Hills, LLC. (Def. Lenhil, Inc.'s Resps. Pl.'s

---

[1] Hollingsworth's Estate, relying on Section 8C-1, Rule 601(c) (the Dead Man's Statute), filed a motion to strike any testimony from Kenneth King, BDM's managing partner, as to Hollingsworth's oral communications regarding the transaction at issue. BDM contends that Hollingsworth's Estate waived the protection of that rule during pretrial depositions. The court ultimately concludes that King's testimony regarding any statements Hollingsworth made is immaterial to the court's consideration of the current motions. The admissibility of this testimony can be addressed in later proceedings as necessary.

[2] King testified both individually and as BDM's Rule 30(b)(6) deponent for this case. (King I 7:10–8:5.)

First Req. Admis. ¶ 1; Burnett Dep. 83:10–15.)  Burnett had a North Carolina real estate license during the relevant time period.  (Burnett Dep. 12:5–24.)

{12}   Defendant Daniel Hilla ("Hilla") is an officer, director, and shareholder of Lenhil and Lennon Hills, LLC, both of which he co-owns with Burnett.  (Aff. Daniel Hilla ¶ 3; Burnett Dep. 83:10–15.)

{13}   Burnett established and operates Viable for tax purposes as a pass-through entity for some of his business and real estate dealings.  (Burnett Dep. 19:13–20:23.)  Burnett is its sole owner and shareholder.  (Burnett Dep. 19:13–15.)

{14}   Defendant Gary Lawrence served as BDM's closing attorney and escrow agent in the land transaction at issue.  (King I 27:1–27:17, 29:23–30:19; Gary Lawrence Dep. 122:8–13.)

B.  The Transaction

{15}   BDM signed a homesite purchase agreement with Lenhil to buy ten residential lots in Lennon Hills for $850,000 on December 5, 2006.  (Burnett Dep. Ex. 17, Dec. 10, 2012; King I 232:22–24.)  The sale closed on March 1, 2007.  (King I 232:7–21.)  Although BDM alleges eleven different causes of action against seven Defendants, BDM's central contention is that it was improperly induced to purchase lots in Lennon Hills because of undisclosed conflicts of interest and collusion between the Defendants.  The crux of the claim is that Hollingsworth was a dual agent who did not disclose his agency relationship with the seller.  There are factual disputes over whether Hollingsworth was an agent for either buyer or seller in this transaction.

{16}   In September 2005, Hollingsworth mailed Burnett a letter offering him real estate development consultation services.  (Burnett Dep. 35:12–36:18.)  Burnett denies that he ever engaged Hollingsworth in that capacity, insists that the letter was a joke, and maintains that he, through Viable, only employed Hollingsworth for tax and accounting work.  (Burnett Dep. 35:12–40:10.)

{17}    At some point, Hollingsworth approached Burnett and said he had two groups of potential buyers for lots in Lennon Hills. (Burnett Dep. 116:24–117:7.) Burnett said he would "take care" of Hollingsworth if he delivered buyers. (Burnett Dep. 116:24–117:7.) Burnett denies knowing that Hollingsworth had a North Carolina real estate license at time. (Burnett Dep. 133:5–19.) Rather, Burnett indicates he used his own real estate license to enable Viable to receive half of the sales commission in the BDM transaction. (Burnett Dep. 12:5–24, 51:14–52:12, 129:10–25.)

{18}    BDM contends that Hollingsworth served as its agent in the transaction and arranged the sale on its behalf. (King I 173:8–17.) King and BDM did not compensate Hollingsworth for his services, nor did they sign a contract with Hollingsworth regarding his role in the transaction. (King I 152:18–23, 174:12–13.) Hollingsworth initially approached King about purchasing lots in Lennon Hills, faxed a map of the subdivision, provided the homesite purchase agreement, selected the lots BDM would purchase, helped arrange financing and appraisals, and picked up and delivered documents in connection with the closing. (King I 153:5–156:16, 168:21–169:12; King Dep. 23:16 – 24:19, Dec. 4, 2012 (hereinafter "King II"); Gary Lawrence Dep. 85:7–87:3.) Hilla, who handled lot pricing, availability, and sales for Lenhil, contends that Hollingsworth did not negotiate the contract price "or any of the other terms of the BDM contract." (Aff. Daniel Hilla ¶¶ 5, 9–11.) Burnett, through Viable, paid Hollingsworth a "consultation fee" equal to the amount of Viable's commission for delivering the purchase agreement to BDM and helping close the deal. (Burnett Dep. 160:13–161:21.)[3]

{19}    BDM never asked Hollingsworth if he was working for the developers or otherwise receiving compensation for his role in the transaction. (King II 188:14–189:5.) Hollingsworth never disclosed to BDM, Gary Lawrence, or Pam Lawrence (Gary Lawrence's wife), that he was working on behalf of some of the

[3] The Parties vigorously dispute whether the payment Hollingsworth received was a "commission" or a "consultation fee." Regardless of how the payment is characterized, all Parties agree that shortly after the transaction closed Hollingsworth received a $42,500 payment from Viable, the same amount of Viable's commission disclosed on the HUD Settlement Statement.

Lennon Hills Defendants[4] and would receive payment in connection with the sale. (King II 27:17–28:14; Gary Lawrence Dep. 85:7–87:3, 92:12–93:9; Pam Lawrence Dep. 39:7–52:13.)

{20}    Gary Lawrence served as BDM's closing attorney and the escrow agent in the transaction. (Gary Lawrence Dep. 122:8–13; King I 33:2–12.) Gary Lawrence was not involved in preparing or negotiating the sale contract between BDM and Lenhil. (King I 51:14–20; Gary Lawrence Dep. 102:24–103:12.) He became involved in the transaction only after Burnett dropped off the signed homesite purchase agreement between Lenhil and BDM at his office and requested that he conduct the closing. (Gary Lawrence Dep. 53:20–54:11.) Gary Lawrence performed a title search and prepared and recorded the HUD Settlement Statement, deeds, and other closing documents. (King I 34:4–35:16; *see generally* Gary Lawrence Dep.) During his title search, Gary Lawrence discovered a deed of trust for Lennon Hills, LLC encumbering BDM's lots, but did not disclose that deed to BDM before or during closing because he knew it would be released and would not affect BDM's title to the lots. (Gary Lawrence Dep. 70:3–80:17.) The deed of trust was later released, BDM had clear title to the lots at closing, and no one has challenged its title since the closing. (King I 35:13–37:13, 41:7–12.)

{21}    Pam Lawrence, Gary Lawrence's wife, owns Lawrence Sales & Marketing, which served as listing agent for Lennon Hills during the relevant time period. (Pam Lawrence Dep. 22:8–25:24.) Both Pam Lawrence, through Lawrence Sales & Marketing, and Gary Lawrence rented professional office space from companies owned by Burnett. (Pam Lawrence Dep. 18:17–20:18; Gary Lawrence Dep. 123:1–16.) Gary Lawrence performed legal services for Lenhil and Lawrence Sales & Marketing in connection with Lennon Hills, including preparing the covenants and restrictions, homeowners' association bylaws, and the form contract used by Lawrence Sales & Marketing for Lennon Hills sales. (Gary Lawrence Dep. 14:3–21, 26:22–30:16, 102:4–103:12.) Gary Lawrence closed most of the prior sales

---

[4] The court refers to Burnett, Hilla, Lenhil, Lennon Hills, LLC, and Viable collectively as the "Lennon Hills Defendants."

in Lennon Hills before BDM's purchase. (Gary Lawrence Dep. 122:8–13.) He did not disclose to King or BDM that his wife's company was the listing agent or that he had performed prior legal work for the Lennon Hills developers. (Gary Lawrence Dep. 54:16–55:10, King I 33:16–34:4.) Even though Gary Lawrence was the closing attorney, he and King never spoke or communicated regarding the transaction until this litigation began. (King I 33:16–34:4.)

{22} The HUD Settlement Statement discloses that Viable and Lawrence Sales & Marketing would each be paid a $42,500 commission in the transaction. (Burnett Dep. Ex. 8 (hereinafter "HUD Statement").) Gary Lawrence did not affirmatively disclose to BDM that his wife, Pam Lawrence, owned Lawrence Sales & Marketing. Viable paid an amount equal to its commission to Hollingsworth as a "consultation fee" for bringing BDM to the transaction. (Burnett Dep. 111:22–114:3.) Gary Lawrence, who prepared the HUD Settlement Statement, maintains he did not know or suspect that Hollingsworth was receiving any payment in connection with the sale. (Gary Lawrence Dep. 92:12–93:9.) Neither King nor BDM has presented any evidence that Gary Lawrence knew Hollingsworth would receive that payment. (King I 74:13–18.)

{23} Once the original closing deadline of February 6, 2007 passed, Hollingsworth began to push King to close the transaction. (King I 232:7–21.) King was moving residences and unavailable to attend an in-person, formal closing, so Hollingsworth arranged to pick up the documents from Gary Lawrence and have King sign them on BDM's behalf in a bank's parking lot. (King I 45:22–46:20, 55:9–58:5; Gary Lawrence Dep. 83:7–87:3.) Lawrence treated this as a "mail away" closing, which he contends was common practice in Brunswick County for real estate transactions involving out-of-state purchasers. (Gary Lawrence Dep. 81:7–82:11.) King did not object to closing in a parking lot at the time and concedes that it did not have a material impact on the transaction. (King I 55:9–58:5.)

{24} BDM did not plan to build on the land. (King I 82:23–83:3.) Rather, it planned to purchase the lots, hold them for twelve to eighteen months (during which time the developers would pay the interest on the loan), and then resell them

to the developer or another buyer for a profit. (King I 49:10–50:6.) BDM never reduced any binding repurchase agreement with the developers to writing, however. (King I 49:10–50:6, 124:18–22.) BDM did no due diligence investigation into the lot purchase, nor did anyone from BDM visit or look at the property before signing the homesite purchase agreement or closing the transaction. (King I 38:7–17, 49:6–9.)

{25} While BDM has explored many other factual hypotheses during earlier stages of this case, the extensive testimony and documentary evidence revolves around what Hollingsworth did, what he disclosed, what others knew about what he did or disclosed, and what legal consequences flow from those acts, omissions, or knowledge. During his deposition, King, a practicing attorney, confirmed that BDM's central theory is that Hollingsworth, with the knowledge or acquiescence of the other Defendants, induced BDM to purchase lots in Lennon Hills without disclosing his relationship with the developers or the fact that he would earn a commission on the transaction. (King II 23:16–25:23; 190:19–191:20; 198:12–199:14.) BDM contends Hollingsworth's inducement, coupled with failing to disclose his possible agency relationship with the Lennon Hills Defendants, allows BDM to rescind the transaction. Other Defendants remain in the case because BDM contends their relationships with Hollingsworth or the Lennon Hills Defendants in this transaction warrant imposing vicarious liability on them for Hollingsworth's possibly actionable conduct.

## IV. ANALYSIS

{26} The court will first address the various summary judgment motions, then it will consider BDM's Motion to Amend.

{27} Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013); *Andresen v. Progress Energy, Inc.*, 204 N.C. App. 182, 184, 696 S.E.2d 159, 160–61 (2010).

{28} The moving party must demonstrate the absence of a triable issue and does so either: "(1) by showing that an essential element of the opposing party's claim is nonexistent; or (2) [by] demonstrating that the opposing party cannot produce evidence sufficient to support an essential element of the claim or overcome an affirmative defense which would work to bar its claim." *Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 90, 464 S.E.2d 299, 300 (1995) (citing *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992)).

{29} If the moving party carries this burden, the non-moving party "must 'produce a forecast of evidence demonstrating that the [non-moving party] will be able to make out at least a prima facie case at trial.'" *Roumillat*, 331 N.C. at 63, 414 S.E.2d at 342 (quoting *Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)); *Rankin v. Food Lion*, 210 N.C. App. 213, 217, 706 S.E.2d 310, 313–14 (2011); *see also* § 1A-1, Rule 56(e) (non-moving party "must set forth specific facts showing that there is a genuine issue for trial."). This forecast "may not rest upon the mere allegations or denials of [a] pleading," § 1A-1, Rule 56(e), nor may it rest upon unsworn affidavits or other inadmissible materials, *see Rankin*, 210 N.C. App. at 218–22, 706 S.E.2d at 314–16 (affirming summary judgment where only inadmissible, unauthenticated documents and no affidavits or sworn testimony were submitted in response to summary judgment motion).

{30} BDM alleges eleven different causes of action against seven Defendants. All Defendants have moved for summary judgment on all claims, and BDM has moved for summary judgment on all claims except those asserted against Gary Lawrence. Seven of BDM's claims are "direct" causes of action that support liability without another underlying claim. Four of BDM's claims are "indirect" causes of action that seek to impose joint and several liability.[5] Each "indirect" cause of action necessarily depends upon whether any of BDM's "direct" claims

---

[5] As pleaded, the Second Amended Complaint asserts a conspiracy claim and joint and several liability against joint tortfeasors. As explained below, the court has narrowed the issues to whether Hollingsworth breached fiduciary duties arising from his obligations as an agent, and if so, whether his alleged principal is liable. The court will permit the claims to be so clarified in an amended complaint.

survive summary judgment.  Accordingly, the court first considers the summary judgment motions as to the "direct" claims, then it addresses the "indirect" claims.

A.  Summary Judgment Motions on "Direct" Claims

{31}     BDM brings "direct" claims for fraud, negligent misrepresentation, fraud in the inducement, breach of fiduciary duty, constructive fraud, unfair or deceptive trade practices, and unjust enrichment against Hollingsworth based, essentially, on his failure to disclose his relationship with Burnett and the Lennon Hills Defendants and the fact that he would receive a commission if BDM purchased lots in Lennon Hills.  (Pl.'s Br. Supp. Mot. Summ. J. Against Hollingsworth 1–2.)  BDM also brings "direct" claims of fraud, fraud in the inducement, and negligent misrepresentation against Gary Lawrence for failing to disclose his relationship with Lawrence Sales & Marketing, the prior legal work he performed for the Lennon Hills Defendants, and a deed of trust that never affected BDM's title to the lots.

{32}     The inquiry begins with examining the evidence of a fiduciary relationship between BDM and Hollingsworth and evidence regarding Hollingsworth's relationship with the Lennon Hills Defendants.

1.  Hollingsworth's Legal Relationships with BDM and the Lennon Hills Defendants

{33}     BDM contends that Hollingsworth owed it fiduciary duties either by serving as its agent in the Lennon Hills transaction (a *de jure* fiduciary relationship)[6] or by exercising dominion and control over BDM in the transaction by

---

[6] The court earlier rejected a claim that Hollingsworth owed fiduciary duties arising from an accountant-client relationship, as any such relationship with BDM's partners individually had ceased and Hollingsworth was not BDM's accountant.  *See BDM Invs.*, 2012 NCBC LEXIS 7, at *52. The Parties disagree over whether this court's prior Order dismissing those claims precludes BDM from now arguing it was in a *de jure* fiduciary relationship with Hollingsworth arising from agency. That Order only dismissed BDM's breach of fiduciary duty claims premised on the accountant-client relationship between Hollingsworth and King that ended when Hollingsworth sold his accounting practice in 2004 and no longer served as King's personal accountant.  While originally cast in the

virtue of the trust and confidence that King reposed in him (a *de facto* fiduciary relationship).  BDM contends that Hollingsworth also served as an agent for the Lennon Hills Defendants in the transaction.  This possible contested dual agency relationship is central to BDM's case.

{34}    While rejecting any *de facto* fiduciary relationship, the court ultimately concludes that genuine issues of material fact exist regarding both whether Hollingsworth served as BDM's agent in the transaction and whether Hollingsworth served as Viable's, Lenhil's, or Lennon Hills, LLC's agent in the transaction.  Plaintiffs must prove this dual agency to prevail on any claim in this case.

{35}    "An agency relationship 'arises when parties manifest consent that one shall act on behalf of the other and subject to his control.'"  *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 74, 698 S.E.2d 757, 764 (2010) (quoting *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 524, 528 S.E.2d 923, 926 (2000)).  "Actual authority may be implied from the words and *conduct* of the parties and the facts and circumstances attending the transaction in question."  *Munn v. Haymount Rehab. & Nursing Ctr., Inc.*, 208 N.C. App. 632, 638 (2010) (quoting *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000)) (emphasis added and internal quotation omitted).  "Whether a principal-agent relationship exists is a question of fact for the jury when there is evidence tending to prove it; it is a question of law for the court if only one inference can be drawn from the facts."  *Smock v. Brantley*, 76 N.C. App. 73, 75, 331 S.E.2d 714, 716 (1985) (citing *Partin v. Power & Light Co.*, 40 N.C. App. 630, 637, 253 S.E. 2d 605, 611 (1979)).  An agency agreement "for services in . . . buying . . . real estate need not be in writing."  *Scheerer v. Fisher*, 202 N.C. App. 99, 103, 688 S.E.2d 472, 474 (2010) (citing *Palmer v. Lowder*, 167 N.C. 331, 83 S.E. 464 (1914)).

---

form of conspiracy or joint torts, the discovery reveals the claim is more appropriately considered in the context of potential agency.  BDM may present evidence it argues establishes a different *de jure* fiduciary relationship, including duties arising from an agency relationship.

{36} BDM did not pay Hollingsworth in connection with the transaction, nor was there any written agreement regarding Hollingsworth's role in the transaction. Although King testified that he did not consider Hollingsworth BDM's "realtor" in the transaction, he also testified that Hollingsworth took numerous acts on BDM's behalf leading up to the closing of the transaction and he understood that Hollingsworth was serving as BDM's agent in the transaction. This evidence, along with other evidence in the record, demonstrates that genuine issues of material fact exist regarding whether Hollingsworth served as BDM's agent in the transaction. The court concludes that BDM has presented sufficient evidence to allow a jury to find an agency relationship. If so, there would be a *de jure* fiduciary duty and the jury would need to find whether such duty was breached and caused BDM to complete the lot purchase. The court concludes, however, that BDM has not presented sufficient evidence of a *de facto* fiduciary duty based on a special relationship of trust and confidence to warrant submitting that issue to a jury.

{37} As to BDM's allegation that Hollingsworth also served as the Lennon Hills Defendants' agent, Burnett admits that Viable employed Hollingsworth, but he contends that Hollingsworth only provided Viable with accounting and business consulting services. Although Hollingsworth sent a letter offering Burnett services for real estate development, Burnett maintains the letter was a joke and he never employed Hollingsworth in this capacity. Burnett also acknowledges, however, that he told Hollingsworth he would "take care" of him if he brought buyers to the developers. Viable paid Hollingsworth a "consultation fee" equal to Viable's commission in the transaction.

{38} Burnett was sole owner of Viable and half-owner of Lenhil and Lennon Hills, LLC. Burnett acknowledges that Viable was a pass-through entity for some of his real estate and business ventures. Lenhil and Lennon Hills, LLC, which Burnett co-owned with Hilla, were the parties in interest for Lennon Hills lot sales. Based on this evidence and other evidence in the record, the court concludes that genuine issues of material fact exist as to whether Hollingsworth served as Viable,

Lenhil, or Lennon Hills, LLC's agent and, if so, whether the scope of that relationship extended to soliciting buyers for Lennon Hills.

### 2. Breach of Fiduciary Duty and Constructive Fraud

{39}   Based on an alleged fiduciary duty owed by Hollingsworth, BDM asserts claims for breach of that duty and constructive fraud against him.

{40}   To prove a breach of fiduciary duty, BDM must show: (1) the existence of a fiduciary relationship; (2) a breach of that duty; and (3) the breach proximately caused plaintiff's injury. *See Green v. Freeman*, __ N.C. __, 749 S.E.2d 262, 268 (N.C. 2013); *Alcorn v. Bland*, No. COA12-613, 2012 N.C. App. LEXIS 1416, at *9 (N.C. Ct. App. Dec. 18, 2012).

{41}   A constructive fraud claim requires showing "facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 679 (1981). When the superior party in a fiduciary relationship obtains a benefit through abuse of that relationship, the plaintiff may recover for constructive fraud. *Forbis v. Neal*, 361 N.C. 519, 529, 649 S.E.2d 382, 388 (2007). Essentially, "[t]he primary difference between . . . a claim for constructive fraud and one for breach of fiduciary duty is" that constructive fraud requires showing that the defendant benefited himself through his breach of fiduciary duty. *See, e.g.*, *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004).

{42}   If a jury concludes that Hollingsworth served as BDM's agent in the Lennon Hills transaction, a fiduciary duty of some scope arises as a matter of law. Agents owe fiduciary duties to their principals "with respect to matters within the scope of [the] agency." *E.g.*, *Hutchins v. Dowell*, 138 N.C. App. 673, 677, 531 S.E.2d 900, 902 (2000) (citations and quotations omitted). An agent "representing a purchaser or seller in" a real property transaction "owes a fiduciary duty to his

client based upon the agency relationship" between them. *Sutton v. Driver*, 211 N.C. App. 92, 99–100, 712 S.E.2d 318, 323 (2011) (quoting *Kim v. Prof'l Bus. Brokers Ltd.*, 74 N.C. App. 48, 51–52, 328 S.E.2d. 296, 299 (1985)).

### a. Hollingsworth's Duty of Disclosure

{43}    The fiduciary duty of agents includes making "full and truthful disclosure of all known or discoverable [material] facts likely to affect the client." *Sutton*, 211 N.C. App. at 100, 712 S.E.2d at 323 (citing *Brown v. Roth*, 133 N.C. App. 52, 54–55, 514 S.E.2d 294, 296 (1999)); *see also Spence v. Spaulding & Perkins, Ltd.*, 82 N.C. App. 665, 667, 347 S.E.2d 864, 865–66 (1986). A "dual agent owes all fiduciary and other agency duties to both principals" and must "make a full and truthful disclosure . . . of all material facts [concerning] the [p]roperty." *Brown*, 133 N.C. App. at 55, 514 S.E.2d at 296.

{44}    Defendants argue that the court need not further consider any claim of undisclosed dual agency because BDM has not demonstrated any damage or loss arising from that failure to disclose so that any failure to disclose was not material. Defendants fail, however, to account for the fact a dual agency is in and of itself material and must be disclosed to both principals in a real estate transaction. *See Greene v. Rogers Realty & Auction Co.*, 159 N.C. App. 665, 668, 586 S.E.2d 278, 280 (2003) ("An agent can represent both the seller and buyer as long as both parties have full knowledge and have given their consent."). Disclosure is a critical component of legitimizing dual agency in real estate transactions. *Cf. Brown*, 133 N.C. App. at 55, 514 S.E.2d at 296 (confirming that agent may serve both sides in real estate transaction "with the full knowledge and consent of both" and noting conflicting evidence in the record created uncertainty as to whether "*lawful* dual agency" existed) (emphasis added). Indeed, North Carolina law permits revocation or suspension of a real estate broker's license for representing "more than one party in a transaction without the knowledge of all parties for whom he or she acts." N.C. Gen. Stat. § 93A-6(a)(4) (2013). The purpose of Chapter 93A is "to 'protect sellers,

purchasers, lessors[,] and lessees of real property from fraudulent or incompetent brokers or salesmen.'" *Furr v. Fonville Morrisey Realty, Inc.*, 130 N.C. App. 541, 545, 503 S.E.2d 401, 405 (1998) (quoting *McArver v. Gerukos*, 265 N.C. 413, 416, 155 S.E.2d 277, 280 (1965)), *disc. rev. granted*, 305 N.C. 94 (1999), *and disc. rev. improvidently granted*, 351 N.C. 41.

{45}     The Parties dispute whether a violation of Chapter 93A, in and of itself, warrants imposition of civil liability, as the statute creates no express private right of action.  BDM does not bring a direct claim for a violation of this statute, however. It asserts common law tort claims.  The court does not here utilize Chapter 93A to impose civil liability.  Rather, it considers the statute as a reflection of North Carolina's public policy regarding the materiality of disclosure of dual agency relationships in real estate transactions.  Failing to disclose dual agency is potentially actionable through common law claims for breach of fiduciary duty or constructive fraud.

{46}     In *John v. Robbins*, 764 F. Supp. 379 (M.D.N.C. 1991), a federal court applying North Carolina law denied summary judgment for defendants where the record presented conflicting evidence of whether one of the defendant's agents disclosed her firm's representation of the seller to the property buyers she represented in the same transaction.  *Id.* at 389–90.  The court noted that the undisclosed dual agency supported a breach of fiduciary duty claim "based on a conflict of interests" and further concluded that a jury "could determine that [p]laintiffs would not have proceeded in the transaction" had they known of the dual agency.  *Id.* at 390.  Similarly, in *Bear Hollow, LLC v. Moberk, LLC*, No. 5:05CV210, 2006 U.S. Dist. LEXIS 36780 (W.D.N.C. June 5, 2006), a federal court applying North Carolina law permitted a land buyer to pursue fraud and negligent misrepresentation claims against the seller who failed to disclose that he agreed to pay the buyer's agent a fee for "getting the deal done."  *Id.* at *16–*22.  Knowledge of the seller's agreement to pay the buyer's agent was a material because it "would

have influenced [the buyer's] judgment in entering the contract to purchase . . . the property." *Id.* at *21.[7]

{47}    Proof of materiality alone, however, does not yield liability.  BDM must further demonstrate that any breach of duty caused it to complete the purchase it would not have otherwise completed.

{48}    King has testified he did not know or suspect Hollingsworth was working for the Lennon Hills Defendants and that BDM would not have purchased the lots if it knew Hollingsworth would receive payment from the sellers for bringing BDM to the transaction.  This testimony creates a genuine issue of material fact.  Assuming Hollingsworth's breach of duty, the fact that Hollingsworth received payment from the seller for delivering BDM to the sale is adequate to support the constructive fraud claim because Hollingsworth benefitted from his breach.  Although Hollingsworth's omission may be material as a matter of law, the jury may ultimately reject BDM's contention that Hollingsworth's failure to disclose caused BDM to purchase the lots.  The contested issue of causation remains for both the breach of fiduciary duty and constructive fraud claims.

b.   BDM's Remedy

{49}    BDM claims that, if it was fraudulently induced by Hollingsworth's failure to disclose his relationship with the Lennon Hills Defendants, it is entitled to rescind the transaction without providing further proof of damages.

{50}    Claims for breach of fiduciary duty and constructive fraud both require "proof of an injury proximately caused by the breach of duty." *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 600–01, 534 S.E.2d 233, 237 (2000).  Damages for either actual or constructive fraud are measured as "the amount of loss caused by the difference between what was received and what was promised through a false representation." *See Collier v. Bryant*, 719 S.E.2d 70, 80 (N.C. Ct. App. 2011)

---

[7] The court notes that the agent himself was not a party in the *Bear Hollow* case, but *Bear Hollow* supports the proposition that the fact of dual agency is material and should be disclosed in real estate transactions.

(quoting *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256, 507 S.E.2d 56, 65 (1998)) (internal quotation marks omitted). In *Collier*, the court permitted plaintiffs, who were fraudulently induced to contract through constructive and actual fraud, to "repudiate the contract or affirm the contract and recover damages[.]" *Id.* at 82 (citing *Parker v. White*, 235 N.C. 670, 688, 71 S.E.23d 122, 128 (1952)). One fraudulently induced to enter a contract may rescind it *and* recover damages if rescission does not restore the party to its pre-contract position. *Id.* (citing *Kee v. Dillingham*, 229 N.C. 262, 265, 49 S.E.2d 510, 512 (1948)).

{51}     In *Gosai v. Abeers Realty and Development Marketing, Inc.*, 166 N.C. App. 625, 605 S.E.2d 5 (2004), a broker served as the disclosed dual agent in a land sale, but did not disclose to the buyer that the broker previously owned the property, which was condemned, conveyed it via a sham transaction to the seller, and that the broker would receive a hidden profit once the sale closed. 166 N.C. App. 625, 626–29, 605 S.E.2d 5, 7–9 (2004). The broker's breach of his duty to disclose entitled plaintiff-buyers to sue for rescission and recover damages, including the secret profit obtained by their agent, to restore them to their pre-purchase position. *Id.* at 629–30, 605 S.E.2d at 9 (citing *Spence*, 82 N.C. App. at 668, 347 S.E.2d at 868).

{52}     This case is unlike most real estate fraud cases because it does not involve fraud or misrepresentation concerning facts affecting the title, quality, status, or nature of real estate or improvements. Rather, BDM's case centers, as King admits, on Hollingsworth's undisclosed dual agency, not any defect concerning the land itself.[8] The Parties' briefing and the court's research has not revealed a case under North Carolina law considering whether an undisclosed dual agency, without any other misrepresentation or omission, permits a party to rescind a real estate transaction if a jury finds the failure to disclose led to the purchase. Cases from other jurisdictions support such a remedy, however. *See, e.g., Whalen v.*

---

[8] BDM does contend that, if rescission was not a remedy, it could recover the difference between his purchase price and the lots' fair market value at the time of his purchase. The court does not examine this claim because it concludes BDM may seek rescission here.

*Bistes*, 45 So. 3d 290, 294 (Miss. Ct. App. 2010) (holding that "agency principles suggest [an agent's] failure to disclose the nature of his dual representation renders the contract voidable at [the buyer's] election . . . regardless of whether the [buyer] suffered an actual injury") (citing 3 Am Jur. 2d *Agency* § 238 (2002)); *Duffy v. Setchell*, 38 Ill. App. 3d 146, 149–50, 347 N.E.2d 218, 221 (Ill. App. Ct. 1976) (noting undisclosed dual agency permits buyer to void contract even where no other damages shown).

{53}     The court has already concluded that genuine issues of material fact exist regarding whether Hollingsworth breached his fiduciary duty by failing to disclose his relationship with the Lennon Hills Defendants and whether any such breach caused BDM to make its purchase. If a jury concludes that this omission led to BDM's decision to purchase lots, BDM would be entitled to rescind the deed and pursue damages against Hollingsworth for injuries not fully remedied by recovery of its purchase price.[9]

### 3.   Fraud, Fraud in the Inducement, and Negligent Misrepresentation

{54}     BDM's fraud, fraud in the inducement, and negligent misrepresentation claims against Hollingsworth center on the same omissions underlying its constructive fraud and breach of fiduciary duty claim.

{55}     BDM's fraud, fraud in the inducement, and negligent misrepresentation claims against Gary Lawrence stem from his failure to disclose: (1) his wife's ownership of Lawrence Sales & Marketing; (2) the prior legal work he performed for the Lennon Hills Defendants; and (3) a deed of trust that was later released and never affected BDM's title to the lots.

{56}     In fraud or misrepresentation claims based on omissions or concealments of facts, the defendant must have had a duty to disclose the facts in

---

[9] As discussed below in Section C of this Opinion, the court will permit BDM to amend its complaint to add a *respondeat superior* claim against Viable, Lenhil, and Lennon Hills for Hollingsworth's acts. Thus, BDM may pursue rescission against Lenhil, and damages against Viable and Lennon Hills, LLC, as well.

question.  "A duty to disclose arises where: (1) a fiduciary relationship exists between the parties to the transaction; (2) there is no fiduciary relationship and a party has taken affirmative steps to conceal material facts from the other; and (3) there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (citing *Sidden v. Mailman*, 137 N.C. App. 669, 675, 529 S.E.2d 266, 270-71 (2000)) (internal quotation marks omitted).

{57}    To prove a fraud claim, a party must show "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive . . . ; (3) that defendant intended to deceive . . . ; (4) that [the party] was deceived; and (5) . . . damage resulting from defendant's misrepresentation or concealment." *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 47 (1997).

{58}    To prove fraud in the inducement, one must show:

(i) that defendant made a false representation or concealed a material fact he had a duty to disclose; (ii) that the false representation related to a past or existing fact; (iii) that defendant made the representation knowing it was false or made it recklessly without knowledge of its truth; (iv) that defendant made the representation intending to deceive plaintiff; (v) that plaintiff reasonably relied on the representation and acted upon it; and (vi) plaintiff suffered injury.

*Harton v. Harton*, 81 N.C. App. 295, 298–99, 344 S.E.2d 117, 119–20 (1986).

{59}    "[N]egligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988).

{60}    The primary difference between constructive fraud and actual fraud is that actual fraud requires proof of the defendant's intent to deceive. *See, e.g., Miller v. First Nat'l Bank*, 234 N.C. 309, 316, 67 S.E.2d 362, 367 (1951).  The "intent to deceive" element of fraud is rarely susceptible to summary judgment because it

almost always must be proven by circumstantial evidence. *See, e.g.*, *Watts v. Cumberland Cnty. Hosp. Sys., Inc.*, 75 N.C. App. 1, 21, 330 S.E.2d 242, 255 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986).

### a. Claims Against Hollingsworth

{61}     Hollingsworth's duty, if any, to disclose his relationship with the Lennon Hills Defendants to BDM arises only by virtue of his potential agency with BDM.  First, assuming such agency, the court also concludes that circumstantial evidence exists from which a jury could find that Hollingsworth's omissions were made with the intent to deceive BDM.  Accordingly, the court concludes that the facts supporting BDM's breach of fiduciary duty and constructive fraud claims (outlined extensively in the prior section of this Opinion) also create genuine issues of material fact regarding the other elements of BDM's fraud, negligent misrepresentation, and fraud in the inducement claims against Hollingsworth. However, any remedy BDM may seek against Hollingsworth for these claims is coextensive with the remedy for its constructive fraud and breach of fiduciary duty claims.

### b. Claims Against Gary Lawrence

{62}     BDM's case against Gary Lawrence is more difficult, but the court concludes that the fraud, fraud in the inducement, and negligent misrepresentation claims against him cannot survive summary judgment.  Lawrence's first involvement in this transaction began after the sales contract between BDM and Lenhil was fully executed.  BDM cannot point to any fraudulent omissions by Gary Lawrence that caused the harm it alleges here—purchasing the lots in Lennon Hills.  Gary Lawrence served as BDM's closing attorney, but his involvement in the transaction began only after Burnett delivered a signed sales contract between BDM and Lenhil to his office.  As closing attorney and escrow agent under these circumstances, Lawrence's role in the transaction was to prepare the closing

documents, conduct a title search, disburse the escrow funds in accordance with the HUD Settlement Statement, and record the deed and other documents so the transaction would close.[10] The court acknowledges that the North Carolina Rules of Professional Conduct might impose on Lawrence an ethical obligation to disclose to BDM his past legal work for the Lennon Hills Defendants and his wife's ownership of Lawrence Sales & Marketing. His failure to disclose those facts after the purchase contract was binding, however, did not cause BDM to purchase the lots.[11]

{63} BDM likewise suffered no injury from Gary Lawrence's failure to disclose the deed of trust for Lennon Hills, LLC. Lawrence secured a release of the deed of trust after closing. BDM concedes that it received clear title to the lots at closing and that no one has challenged its title.

{64} BDM has not presented evidence of any material omissions by Gary Lawrence that would have freed it from its binding obligation to purchase lots in Lennon Hills. Accordingly, the court enters summary judgment for Gary Lawrence on BDM's fraud, fraud in the inducement, and negligent misrepresentation claims.

### 4. Unfair or Deceptive Trade Practices

{65} A section 75-1.1 claim requires showing an unfair or deceptive act or practice, in or affecting commerce, that proximately caused plaintiff's injury. *Bumpers v. Cmty. Bank of N. Va.*, __ N.C. __, 747 S.E.2d 220, 226 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). "A person engaged either directly or indirectly in the sale of real estate is engaged in commerce within the meaning of [section] 75-1.1." *Davis v. Sellers*, 115 N.C. App. 1, 8, 443 S.E.2d 879, 883–884 (1994) (citing *Rosenthal v. Perkins*, 42 N.C. App. 449, 454, 257 S.E.2d 63, 67 (1979)).

---

[10] This is not a legal conclusion regarding the duties of closing attorneys generally, but rather a summary of Gary Lawrence's duty *in this particular transaction* based on the evidence in the record. BDM has offered no expert testimony or other testimony supporting a greater duty under the particular facts of this case.

[11] The court notes that violations of the Rules of Professional Conduct governing attorneys do not form an independent basis for civil liability. *See Webster v. Powell*, 98 N.C. App. 432, 439, 391 S.E.2d 204, 208 (1990) (citing *McGee v. Eubanks*, 77 N.C. App. 369, 374, 335 S.E.2d 178, 181 (1985)).

{66}    The court concludes that Hollingsworth's conduct was "in and affecting commerce" within the meaning of section 75-1.1, so the motions turn on other elements of the asserted claim.

{67}    Appellate courts have broadly stated that "conduct which constitutes a breach of fiduciary duty and constructive fraud is" unfair or deceptive. *See, e.g.*, *Compton v. Kirby*, 157 N.C. App. 1, 20, 577 S.E.2d 905, 917 (2003).[12]  However, in *Abernathy v. Ralph Squires Realty Co.*, 55 N.C. App. 354, 285 S.E.2d 325 (1982), the court held that an undisclosed dual agency was not "unfair or deceptive" because there was no evidence the dual agent "knowingly and wilfully negotiated the sale price" for the plaintiff-buyers.  55 N.C. App. at 358, 285 S.E.2d at 328. *Abernathy* does not establish "knowing and willful" price negotiation as a necessary condition for any section 75-1.1 claim premised on undisclosed dual agency, however.

{68}    If a jury finds facts in BDM's favor, the court will be required to determine whether those facts rise to the level of a unfair or deceptive trade pratice, so it is premature to make such a determination now.  The court concludes, with significant reluctance in light of BDM's own failure to perform any due diligence before entering the transaction, that the section 75-1.1 claim against Hollingsworth survives summary judgment.

### 5. Unjust Enrichment

{69}    BDM also asserts an unjust enrichment claim against Hollingsworth.[13] Unjust enrichment occurs when: (1) a measurable benefit was conferred on the defendant; (2) the defendant consciously accepted the benefit; and (3) the benefit was not conferred gratuitously. *Progressive Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 184 N.C. App. 688, 695–96, 647 S.E.2d 111, 116 (2007).  Unjust enrichment

---

[12] Such conduct, even if unfair or deceptive, still must be "in or affecting commerce" and have proximately caused injury to the plaintiff.

[13] The Parties dispute whether the court's 2012 Order dismissed BDM's unjust enrichment claim against Viable and Lenhil, as well.  For purposes of the summary judgment motions, the court presumes it did not dismiss the unjust enrichment claim against Viable and Lenhil.

is an equitable theory of recovery unavailable to a party with an adequate remedy at law. *E.g.*, *Jones Cooling & Heating, Inc. v. Booth*, 99 N.C. App. 757, 759–60, 394 S.E.2d 292, 293–94 (1990); *Frazier v. Beard*, 1996 NCBC LEXIS 3, at *15–*16 (N.C. Super. Ct. Oct. 24, 1996).

{70}     The court concludes that the remedies for BDM's other causes of action are adequate remedies at law for the unjust enrichment it alleges—Lenhil's receipt of the $850,000 purchase price and Viable and/or Hollingsworth's $85,000 commission. Accordingly, the court grants summary judgment in favor of Hollingsworth, Viable, and Lenhil on the unjust enrichment claim.

B.  Summary Judgment Motions on "Indirect" Claims

{71}     BDM asserts civil conspiracy, joint venture, and joint adventure claims against all Defendants, and it asserts against other Defendants a claim for aiding and abetting Hollingsworth's breach of fiduciary duty. None of these claims furnish an independent basis of liability. BDM pursues them to impose joint and several liability for Hollingsworth's acts on a theory of either conspiracy or joint tortfeasors. *See, e.g.*, *Sellers v. Morton*, 191 N.C. App. 75, 83, 661 S.E.2d 915, 922 (holding civil conspiracy is not an independent cause of action, but provides remedy against others where there is an agreement of other parties to carry out unlawful conduct); *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 10–11, 161 S.E.2d 453, 461 (1968) (confirming joint enterprise and joint venture are not independent sources of liability, but form the basis of an agency relationship whereby one party's conduct may be imputed to another); *Blow v. Shaughnessy*, 88 N.C. App. 484, 489, 364 S.E.2d 444, 447 (1988) (holding that aiding and abetting breach of fiduciary duty requires a breach of fiduciary duty committed by another).

{72}     BDM's civil conspiracy, joint venture, joint adventure, and aiding and abetting breach of fiduciary duty claims center on essentially the same set of allegations: (1) all the Defendants agreed to pay Hollingsworth an undisclosed, hidden commission for bringing BDM to the transaction; (2) all the Defendants had

Burnett serve as BDM's agent (since Viable received the disclosed commission on the HUD Statement); (3) all the Defendants had Burnett serve as a dual agent; (4) all the Defendants knowingly falsified the HUD Settlement Statement when they knew Viable was receiving a commission that it would ultimately pass on to Hollingsworth; (5) Burnett, Viable, and Lenhil knew that Hollingsworth would not disclose his relationship with them to BDM and still employed Hollingsworth as their agent to induce BDM's purchase; (6) all Defendants failed to disclose Hollingsworth and Burnett's relationship to BDM.[14]

{73}     BDM points primarily to Viable's payment to Hollingsworth, the other Defendants' involvement in the Lennon Hills transaction, and the Defendants' relationships with each other as circumstantial evidence proving a conspiracy to defraud BDM.  BDM contends not only that this claim should survive summary judgment, but also that this circumstantial evidence compels summary judgment in its favor against every Defendant in this case.

### 1.  Civil Conspiracy

{74}     Civil conspiracy is "an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way." *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981).  The cause of action only remedies "damages caused by acts committed pursuant to a conspiracy[.]" *Id.*; *see also Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 334 (2011).  Importantly, plaintiffs must show "*that a conspiracy in fact existed.*" *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 609, 659 S.E.2d 442, 449 (2008) (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000)) (emphasis in original); *see also Tuck v. Turoci*, No. COA06-1571, 2008 N.C. App. LEXIS 175, at *16–*17 (N.C. Ct. App. Feb. 5, 2008) (affirming summary judgment where evidence showed agreement

---

[14] (Pl.'s Br. Supp. Mot. Summ. J. Against Def. Estate of Hollingsworth 26–27; Pl.'s Br. Supp. Mot. Summ. J. Against Lennon Hills Defs. 19–26; Pl.'s Br. Opp'n Mot. Summ. J. Gary Lawrence 19–25.)

between defendants, but not agreement or knowledge of unlawful conduct or plan). "Circumstantial evidence may establish an agreement, but mere 'suspicion or conjecture' does not warrant 'submission to a jury.'" *Estate of Chambers v. Vision Two Hospitality Mgmt., LLC*, 2013 NCBC LEXIS 49, at \*10 (N.C. Super. Ct. Nov. 21, 2013) (citing *S.N.R. Mgmt. Corp.*, 189 N.C. App. at 609, 659 S.E.2d at 449).

{75}     BDM contends that all the Defendants engaged in an unlawful conspiracy to induce it to buy lots in Lennon Hills.  Hollingsworth's alleged failure to disclose his relationship with Burnett, Viable, and Lenhil is the only "unlawful act" or unlawful means to a lawful end that could have caused that fraudulent inducment.  Although BDM need not show that every member of the conspiracy agreed to or knew of the specific wrongful conduct that harmed BDM, it must present evidence, beyond mere suspicion or conjecture, of an unlawful agreement between the Defendants.

{76}     BDM's claim is now before the court pursuant to Rule 56, not Rule 12(b)(6), and BDM must meet the correspondingly higher burden.  Defendants have challenged BDM's evidentiary showing, and BDM must come forward with a forecast of substantial evidence in support of its conspiracy theory.  After a thorough review of the record in this case, the court, construing the evidence in BDM's favor, concludes that circumstantial evidence of any unlawful agreement between the Defendants does not rise above mere suspicion or conjecture.  The Defendants here did interact together during the course of the transaction and likely agreed that selling lots in Lennon Hills benefited their separate businesses.  The Defendants also worked together on prior real estate transactions in Brunswick County, including some of the other Lennon Hills lot sales.  The fact that one of the many Defendants in this case may have improperly failed to disclose his relationship with some of the others does not, without evidence of other unlawful conduct, rise above "suspicion or conjecture" that all Defendants agreed to induce lot purchases through unlawful means.   There is no justifiable basis to conclude that these acts or failures to disclose were in pursuit of an agreement or common scheme, even though they all ultimately relate to a single transaction.  Accordingly,

the court grants summary judgment for all Defendants on BDM's civil conspiracy claim.

## 2.  Joint Venture and Joint Adventure

{77}    As mentioned above, BDM relies on the same allegations and evidence underlying its civil conspiracy claim to support its joint enterprise and joint venture claims against all Defendants.

{78}    A joint enterprise is an alliance between two or more people in pursuit of a common purpose. *Slaughter v. Slaughter*, 93 N.C. App. 717, 720, 379 S.E.2d 98, 100 (1989).  A joint enterprise exists when parties share "a community of interest in the objects or purposes of [an] undertaking" and preserve "an equal right to direct and govern the movement of" the other parties regarding that undertaking.  *Id.*

{79}    "A joint venture exists when there is: (1) an agreement, express or implied, to carry out a single business venture *with joint sharing of profits*, and (2) an *equal right of control* of the means employed to carry out the venture." *Rifenburg Constr., Inc. v. Brier Creek Assocs., LP*, 160 N.C. App. 626, 632, 586 S.E.2d 812, 817 (2003) (emphasis in original and citation omitted).  Although the contributions need not be equal, all parties in a joint venture "must combine their property, money, efforts, skill, or knowledge in some common undertaking." *Cheape v. Town of Chapel Hill*, 320 N.C. 549, 561, 359 S.E.2d 792, 799 (1987).  One proves a joint venture by showing a combination of parties' "funds, property, or labor in a common purpose to attain a result" benefitting the parties.  *Id.*  The evidence must also establish that "each [party] has a right . . . to direct the conduct of the other through a necessary fiduciary" relationship.  *Id.*

{80}    Again, the record in this case shows that the Defendants, through their separate businesses, served some role in the transaction at issue here.  There is, however, no evidence that each of the Defendants enjoyed a legal right to control the conduct of every other Defendant "through a necessary fiduciary relationship" in trying to sell lots in Lennon Hills.  Real estate transactions often require the

involvement of several individuals and businesses. Tied to a single transaction, that involvement, standing alone, does not warrant imposing joint and several liability on every actor that touched the transaction in some way when one of the actors may have committed unlawful conduct. The court, therefore, grants summary judgment for all Defendants on BDM's joint venture and joint adventure claims.

3. Aiding and Abetting Breach of Fiduciary Duty

{81}    BDM's aiding and abetting breach of fiduciary duty claim stems from the same allegations and evidence underlying its civil conspiracy, joint venture, and joint adventure claims.

{82}    It remains unclear whether, in the proper factual context, aiding and abetting breach of fiduciary duty is a valid cause of action under North Carolina law. *See, e.g.*, *Tong v. Dunn*, 2012 NCBC LEXIS 16, at *11–*12 (N.C. Super. Ct. Mar. 19, 2012) (collecting cases and explaining uncertainty over viability of the claim). If this cause of action exists, a party must show: "(1) violation of a fiduciary duty by the primary party; (2) knowledge of the violation by the aiding and abetting party; and (3) substantial assistance by the aider and abettor in achieving the primary violation." *Id.* at *12–*13 (citing *Blow v. Shaughnessy*, 88 N.C. App. 484, 489, 364 S.E.2d 444, 447 (1988)). "[T]he primary party and the aiding and abetting party must have the same level of culpability or scienter." *Id.* at *14 (citing *Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP*, 2005 NCBC LEXIS 1, at *11–*12 (N.C. Super. Ct. June 10, 2005)).

{83}    This case does not present a factual context from which the court could conclude any Defendant aided and abetted a breach of fiduciary duty. The court grants summary judgment to all Defendants on the aiding and abetting breach of fiduciary duty claim.

4. <u>Punitive Damages</u>

{84}   Punitive damages are not an independent cause of action and may only be awarded when a defendant is liable for compensatory damages and committed fraud, malice, or willful or wanton conduct related to the harm for which compensatory damages were awarded. *See, e.g.*, *Iadanza v. Harper*, 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2006) (noting punitive damages is not an independent cause of action); N.C. Gen. Stat. § 1D-15(a) (2013) (listing grounds for punitive damages liability).

{85}   Punitive damages may be awarded for constructive fraud or breach of fiduciary duty claims. *See Compton*, 157 N.C. App. at 21, 577 S.E.2d at 917–18 (constructive fraud); *Stone v. Martin*, 85 N.C. App. 410, 418, 355 S.E.2d 255, 260 (1987) (breach of fiduciary duty); *Lecann v. Cobham*, 2012 NCBC LEXIS 58, at *20–*21 (N.C. Super. Ct. Nov. 7, 2012) (permitting punitive damages for constructive fraud and breach of fiduciary duty).

{86}   It is premature to dismiss punitive damages claims against Hollingsworth. Although the court will permit BDM to pursue a *respondeat superior* claim against Viable, Lenhil, and Lennon Hills, LLC for Hollingsworth's potential constructive fraud and breach of fiduciary duty,[15] BDM has not produced a sufficient forecast of evidence from which a reasonable jury could conclude that clear and convincing evidence exists that an officer, director, or manager of Viable, Lenhil, or Lennon Hills, LLC participated in or condoned any of the potentially fraudulent, malicious, or willful and wanton conduct of Hollingsworth. Without a forecast of such evidence, no punitive damages may be awarded against Viable, Lenhil, and Lennon Hills, LLC's on the basis of vicarious liability for Hollingsworth's actions. *See* § 1D-15(c). Thus, the court grants summary judgment to Viable, Lenhil, and Lennon Hills, LLC as to punitive damages. As no other causes of action remain against Gary Lawrence, Burnett, or Hilla, the court grants summary judgment in their favor as to punitive damages, as well.

---

[15] See Section C on BDM's Motion to Amend.

C. <u>BDM's Motion to Amend Complaint</u>

{87}    BDM has throughout the case contended that all Defendants are tied to Hollingsworth's liability.  As initially pleaded, BDM used theories of conspiracy and joint tortfeasors to reach joint and several liability.  The court has now rejected the claims of joint and several liability.  However, it further concludes that the same factual predicate supports a claim of vicarious liability against Viable, Lenhil, and Lennon Hills, LLC as principals of Hollingsworth as an agent.  BDM's Motion to Amend[16] seeks more broadly to impose liability on each of the Lennon Hills Defendants for every claim asserted against Hollingsworth based primarily on their relationship with him and his allegedly fraudulent acts or omissions.  (*See generally* Pl.'s Br. Supp. Mot. Amend. Compl. Conform Evid. and to Rescind or Amend Prior Order.)

{88}    The court should "freely" grant leave to amend a pleading under Rule 15 "when justice so requires."  N.C. Gen. Stat. 1A-1, Rule 15(a) (2013).  The court may deny a motion to amend a pleading for undue delay, bad faith, undue prejudice, futility of the proposed amendment, or the repeated failure to cure defects by previous amendments.  *E.g.*, *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165–66, 510 S.E.2d 690, 694 (1999).

{89}    Generally, a principal is "liable for its agent's wrongful acts under the doctrine of *respondeat superior* when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) is ratified by the principal."  *White*, 166 N.C. App. at 296, 603 S.E.2d at 157 (2004) (citation omitted).  More specifically, a principal is liable "to third parties for the fraud [committed by] its agent while acting within" the scope of his or her authority.  *Id.* at 297, 603 S.E.2d at 157 (quoting *Thrower v. Coble Dairy Prods. Coop., Inc.*, 249 N.C. 109, 111–12, 105

---

[16] BDM's Motion is styled as one to conform the pleadings to the evidence presented, but such a motion is properly made during trial.  *See* N.C. Gen. Stat. § 1A-1, Rule 15(b) (2013).  The court construes the Motion as a motion to amend a complaint governed by Rule 15(a).

S.E.2d 428, 430 (1958)). The principal remains liable for his agent's fraud committed within the scope of his authority, "even [if] the principal did not know [of] or authorize the . . . fraudulent acts." *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E. 2d 279, 284–85 (1964).

{90} Because the various relationships between Hollingsworth and the Lennon Hills Defendants have been at issue throughout the litigation, the court will permit BDM to amend its complaint *solely* to add a *respondeat superior* claim against Viable, Lenhil, and Lennon Hills, LLC for the potentially actionable conduct of Hollingsworth discussed in this Opinion. When filing its amended complaint, BDM may also remove allegations or claims from its complaint that the court has now foreclosed. BDM shall file its amended complaint within fifteen days of the entry of this order.[17] The court denies, on futility grounds, any other amendments sought by BDM.

{91} Given the late stage of litigation and its view that the facts upon which this limited vicarious liability claim is based have been explored through the other claims, the court will not allow additional discovery absent a showing of good cause. Thus, should any Party wish to reopen discovery, it shall submit a position paper describing, with particularity, the necessity and proposed scope of any additional discovery it seeks. Any request to reopen discovery shall be filed twenty days after BDM files its amended complaint. The court will issue a supplemental Case Management Report if it permits any additional discovery.

{92} The court does not expect any additional motion for summary judgment attacking the vicarious liability claim, as it has now found there to be contested material issues of fact on that claim. Absent demonstrated good cause for additional discovery, the court believes the matter can now be set for trial.

---

[17] To the extent this permitted amendment conflicts with the court's prior dismissal of BDM's claims, conflicting portions of that Order are modified or rescinded pursuant to Rule 54(b) on the ground that that failing to modify that Order would work manifest injustice on BDM. BDM has presented additional evidence, unavailable at earlier stages of litigation, that supports the claims the court will permit it to add.

## V.     CONCLUSION

{93}     For the reasons expressed above, (1) BDM's Motion for Summary Judgment Against Lennon Hills Defendants is DENIED; (2) BDM's Motion for Summary Judgment Against Estate of Glenn Hollingsworth is DENIED; (3) Judith T. Hollingsworth's, as Executrix of the Estate of Glenn Hollingsworth, Motion for Summary Judgment on All Claims is GRANTED in part and DENIED in part; (4) Lenhil, Lennon Hills, LLC, Viable, Burnett, and Hilla's Motion for Summary Judgment is GRANTED in part and DENIED in part; (5) Gary Lawrence's Motion for Summary Judgment is GRANTED; and (6) BDM's Motion to Amend is GRANTED in part and DENIED in part.

IT IS SO ORDERED, this 20th day of March, 2014.